**Benjamin Wolf, Appellee, v. Ideal Sheet Metal Works, Appellant.**

**Gen. No. 23,154.**

CORPORATIONS, § 256*—*when corporation is bound by act of controlling stockholder and president in employing agent to procure funds.* Where the controlling stockholder of a corporation and its general manager, president and director, in order to develop its business, employed plaintiff to secure certain funds for the corporation and promised on behalf of the corporation to compensate him therefor, and plaintiff procured the funds, which were placed in the treasury of the corporation, and the capital stock of the corporation was increased and stock issued to the party furnishing the funds, the corporation was bound by the conduct of the stockholder.

Appeal from the County Court of Cook county; the Hon. J. J. COOKE, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1917. Affirmed. Opinion filed December 28, 1917.

STEDMAN & SOELKE, for appellant.

GEORGE A. McCORKLE and BENJAMIN WOLF, for appellee.

---

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

MR. PRESIDING JUSTICE TAYLOR delivered the opinion of the court.

This is an appeal from a judgment in assumpsit in the County Court in favor of appellee and against appellant, in the. sum of $377.43. It was conceded by the appellant at the trial that it was indebted to appellee for a balance for legal services rendered it by the appellee in the sum of $152.43. The remainder of the claim, namely, the sum of $225, appellant contended it did not owe. Appellant is a corporation chartered about March 6, 1911, originally with a capital stock of $5,000, fully paid up. It is engaged in the business of manufacturing and repairing automobile radiators. One Isador Weissman (who afterwards changed his name to that of Isador White) was its president at the time the controversy in question arose, and was also one of its directors and held some of the capital stock. Appellee, as an attorney at law, took care of part, if not all, of the legal affairs of the corporation. Appellee, in his bill of particulars, charges appellant with $152.43 for certain legal services and incidental expenses, such as Revenue stamps and court costs (which amount is admitted by appellee to be due), and then makes a further charge, as follows: "To services procuring party (Sigmund Greenbaum) to invest $4,500.00 in the capital stock of Ideal Sheet Metal Works, at par, $225." This latter amount is the gravamen of this cause. The evidence of appellee is to the effect that in the summer or fall of 1915, Weissman (hereinafter called White) told him that appellant was in need of funds to carry on its business; that "they did not have sufficient capital to conduct their business"; that appellee, after consulting one of his clients, one Wingert, had another conference with White; that the latter said they ought to have not less than $2,000 more for a working capital; that he, appellee, then took the matter up with one Greenbaum; that he told White, who asked him what he would

charge, that if he procured that amount of money, he would charge $200; that White then said they would have to have $3,700 altogether, being $2,000 in excess of what was due the bank, and $200 for appellee; that White said he would pay appellee $200 if he could "get some one in here with $3,700"; that he, appellee, then saw one Greenbaum and persuaded him to agree to put in $3,700; that, subsequently, White said that would not be sufficient, that "we will have to have at least $4,500"; that appellee agreed to take it up with Greenbaum and told White if that amount of money was put into the enterprise, he, the appellee, would expect "a little more money"; that White said, "We will take that up later"; that he and White then talked over how Greenbaum should be secured for his money, and it was decided to increase the capital stock of the corporation to $16,500; that he then did the legal work necessary for the increasing of the capital stock to $16,500; that Greenbaum then paid in the $4,500 to the appellant, and, subsequently, appellee sent the appellant a statement of account in which was a charge for $225. In increasing the capital stock, which originally was $5,000, to $16,500, the original stock was figured at something over $200 a share; and $4,800 of the $16,500 of stock, which was the final capitalization, was issued directly by appellant to Greenbaum. Appellee testified that that amount was issued directly by the corporation to Greenbaum, and that the promise of White was to pay him $200 if he would procure some one to invest $3,500 in the increased capital stock of the company. The minutes of the meeting of the appellant on November 23, 1915, show that, at that time, White owned in excess of two-thirds of the capital stock, and George Wilkman one-third thereof, and that the directors were White, Wilkman and Jennie R. White.

On November 23, 1915, appellee rendered a bill to "Ideal Sheet Metal Works and S. Greenbaum, * * *

to services, $225, in re increased capital stock of Ideal Sheet Metal Works," and, on December 15, 1915, appellee received a letter from appellant denying liability for any commission. In answer to the latter appellee wrote, on December 24, 1915, stating that he was entitled to the $225, but that, "If you will pay for that item the sum of $150 on or before the 31st inst. I will accept it." Sigmund Greenbaum, the only witness called by the appellant, testified that he was introduced to White by appellee, but that he first talked to White about the appellant company subsequently to that time and out of the presence of Wolf; that after talking with White about the business of appellant he went out several times and looked over its plant; and, subsequently, had some conversation with White in appellee's office as to the amount to which the capital stock of the corporation should be increased; that nothing was ever said in his presence about any arrangement to pay appellee $200 or $225 for his services. On cross-examination, however, Greenbaum admitted that he had been in appellee's office a number of times and had talked over with him, on one occasion, the advisability of going into the business, and, on another occasion, had discussed with White, in appellee's presence, increasing the amount he was willing to invest, from $3,700 to $4,500. He denies, however, having had any conversation as to compensation for appellee until after he received a bill from him.

As White was not called as a witness, there was no direct denial of the promise, on account of which appellee brought suit.

As there was ample evidence to prove the promise of White and, also, the rendition of services by appellant, and, as the trial judge found in favor of the appellee, which finding, as a matter of fact, was consistent with the evidence, there remains to be considered only the following question: Did White, who was a

stockholder, and, according to the minutes of the meeting of February 11, 1915, "general manager of the financial and business end of the business," and also, at the time in question, director and president, have authority to bind the appellant corporation? Considering (1) who owned the capital stock at the time the negotiations began; (2) that the money was sought to develop the business; (3) that the capital stock was increased from $5,000 to $16,500 in furtherance of that purpose; (4) that it may be inferred from the evidence that the money that was invested by Greenbaum was put into the treasury of the corporation; (5) that the evidence sufficiently shows that White, on behalf of the appellant, actually promised appellee compensation for his services; and (6) that appellee got Greenbaum to invest, we are of the opinion that the appellant corporation, as a matter of law, was bound by the conduct of White. *Hull v. Glover*, 126 Ill. 122. The judgment of the trial judge, therefore, must stand.

Finding no error in the record, the judgment is affirmed.

*Affirmed.*