492

FULLER, Respondent, v. JAMES MURPHY HARMS
SUPPLY CO., et al, Appellants.

(223 N. W. 713.)

(File No. 6315.    Opinion filed February 21, 1929.)

*Kelley & Luby* and *Null & Royhl,* all of Huron, for Appellants.

*Bruell & Henderson,* of Redfield, for Respondent.

CAMPBELL, J.  In the year 1918 and prior thereto, James Murphy Harms Supply Company, a corporation, of which James Murphy was president and active manager and principal stockholder (which will be hereinafter referred to as the Murphy Corporation), was conducting a machine and implement business at Hitchcock in Beadle county, S. D.  At about that time there was incorporated for the purpose of conducting a merchandising enterprise in the same town of Hitchcock a concern known as the Farmers' Co-operative Supply Company of Hitchcock, S. D. (which will be hereinafter referred to as the Co-operative Corporation). One of the persons active in promoting the formation of the Co-operative Corporation was an individual by the name of Hollenbeck, and shortly after the formation of said Co-operative Corporation it purchased from the said Hollenbeck a general merchandise stock.  By virtue of a writing, dated October 28, 1918, the Co-operative Corporation purchased from the Murphy Corporation the machinery and implement stock which the Murphy Corporation then owned in Hitchcock, together with certain fixtures, etc.  By agreement in writing, dated January 14, 1919, the Co-operative Corporation employed James Murphy, previously the president and general manager of the Murphy Corporation, as general manager of the Co-operative Corporation with extremely broad powers, and on the same date the Co-operative Corporation leased from James Murphy, individually, certain store premises in the town of Hitchcock at a rental of $125 per month.  The Co-operative Corporation thereupon actively engaged at Hitchcock in the business of selling implements, machinery, and general merchandise at retail under the supervision and mangement of James Murphy, who continued as

such manager until his death on or about August 15, 1922. Shortly after Murphy's death, the probate of his estate was duly inaugurated in the county court of Beadle county, S. D., and L. O. Anderson was duly appointed, qualified, and entered upon his duties as administrator of the James Murphy estate.

In June, 1921, Arthur Miller was president and director of the Co-operative Corporation, Fred Payne was secretary and a director thereof, and B. F. Fuller, S. C. Warfield, and Ernest Hofemann were also directors thereof. It further appears that there was executed on or about June 24, 1921, a certain chattel mortgage wherein the Co-operative Corporation is named as mortgagor and the Murphy Corporation and James Murphy, individually, are named as mortgagees, which instrument purports to mortgage all property of the Co-operative Corporation to secure the payment of two certain promissory notes which are described in said mortgage and are therein referred to as being "made by Farmers' Co-operative Supply Company, a Corporation, payable to James Murphy Harms Supply Company and James Murphy," and which notes will be hereinafter mentioned. As previously stated, this chattel mortgage recites the name of the mortgagor as the Co-operative Corporation, and purports to mortgage the property of the Co-operative Corporation, but the name of the Co-operative Corporation seems not to be included in the signature, which consists merely of the words, "Arthur Miller, Pres., Fred H. Payne, Secty."

It appears that there was executed on June 24, 1921, two promissory notes, being apparently the notes referred to in the chattel mortgage; each of said notes bearing date June 24, 1921, each being payable on or before October 1, 1921, each bearing interest at the rate of 8 per cent per annum from date, and each being signed, "Arthur Miller, Pres., Fred H. Payne, Secty.," and each note showing upon the reverse thereof the following signatures: "Arthur Miller, Pres., Fred H. Payne, Secty., S. C. Warfield, Ernest Hofemann, B. F. Fuller." One of said notes is payable to the order of James Murphy in the principal sum of $8,000; the other of said notes is payable to the order of James Murphy Harms Supply Company, a corporation, in the principal sum of $24,105.33.

It further appears that on July 11, 1922, the Murphy Corporation gave its note for $599.03 to Hitchcock State Bank, and on the

same date gave a second note to Hitchcock State Bank for $951.12, and on the same date James Murphy personally gave his note to said bank for $500. Shortly after the death of James Murphy, the two notes first above referred to, due on or before October 1, 1921, are found in the possession of Hitchcock State Bank, but not indorsed to said bank, the bank claiming to hold the same as collateral to secure the payment of the three notes last above described in the aggregate amount $2,060.15, executed, two by the Murphy Corporation, and one by Murphy, personally, to said bank on July 11, 1922. The cashier of the bank, who is also administrator of the Murphy estate, says that the two notes did not come to the possession of the bank until about July 11, 1922.

Under these circumstances, and in October, 1922, B. F. Fuller, whose name appears upon the back of the two notes of June 24, 1921, commenced an action against the Murphy Corporation and the Hitchcock State Bank with reference to the note of $24,105.33, payable to the Murphy Corporation, alleging that his signature thereon was obtained by the fraudulent, false representations and deceit of James Murphy, president of said Murphy Corporation, and was utterly without consideration, and praying that it be so decreed, and that his signature upon said note be canceled and declared null, void, and of no effect. At the same time the same plaintiff started a similar action against L. O. Anderson, as administrator of the estate of James Murphy, deceased, and the Hitchcock State Bank, wherein he made the same allegations and asked for the same relief with reference to the note of June 24, 1921, in the amount of $8,000, payable to James Murphy. At or about the same time, S. C. Warfield started two similar actions, praying for the same relief, one action against Anderson, administrator, and the bank with reference to the $8,000 note, and one action against the Murphy Corporation and the bank with reference to the note for $24,105.33; and like actions were started at about the same time for the same relief and against the same respective defendants, and having to do with the same notes, respectively, by Fred H. Payne and by Ernest Hofemann.

These eight actions were brought on for trial at the same time in the circuit court of Beadle county, S. D., without a jury, and it was stipulated, for the saving of time and expense, that, so far as the introduction of evidence was concerned, the cases might be tried

together, though with the same force and effect as to admissibility of evidence, etc., in each particular case as though tried separately, separate findings and judgment to be rendered in each case, and that the record so made might be used for the appeal of any or all of the cases. At the conclusion of the trial, the learned trial judge in the instant case made, among others, the following findings of fact:

"The court further finds that on the evening of June 24, 1921, the said James Murphy, who was president of the defendant James Murphy Harms Supply Company at the time, and who was also manager of the Farmers Co-Operative Supply Company of Hitchcock, and said James Murphy called a meeting of the Board of Directors of the Farmers Co-Operative Supply Company of Hitchcock, which meeting was attended by the plaintiff and other directors, except the director Payne, who was not present but who was the secretary of the company and secretary of the board, and that at said time said James Murphy represented to said directors and this plaintiff in particular that said company was threatened with a suit by one I. O. Hollenbeck for thirteen thousand ($13,000.00) dollars, and that his claim was not genuine, but that under the circumstances it would be advisable for the Farmers Co-Operative Supply Company to execute a note payable to the James Murphy Harms Supply Company for such amount as was due it and a note to James Murphy for such amount as might be due him; that this meeting was held late in the evening and it was dark, the lights in the store had gone out and nothing but a smoky lamp was available; that said James Murphy stated to this plaintiff and other directors that each one of them would be required to endorse their names upon the back of the notes in order that it be made legal on the part of the Farmers Co-Operative Supply Company, and that he, the said James Murphy, then and there told said plaintiff that he had consulted legal counsel at Huron on behalf of the company and was advised by legal counsel that no personal liability of the directors would accrue or attach if they endorsed their names upon the back of the instrument, and that he himself then made the representation that there would be no liability whatsoever, and that he would see to it that plaintiff would not in any manner be held liable by reason of his endorsing his name upon the back of any note given at that time to the James Murphy Harms Supply Company,

but that his signature would only indicate plaintiffs assent to the company giving such a note and a chattel mortgage. That the plaintiff did not know that amount, if any, due said James Murphy Harms Supply Company, could not see to read the note, and, relying upon the statements of the said James Murphy, this plaintiff signed his name upon the back of a paper presented by said James Murphy purported to be a note for thirteen thousand ($13,000.00) dollars, payable to James Murphy Harms Supply Company, but which was in fact a note for twenty-four thousand one hundred five dollars and thirty-three cents ($24,105.33), and bears date June 24, 1921, due October 1, 1921. That court further finds that the plaintiff would not have signed said note or endorsed his name on the back thereof had he known that there was any personal liability that would attach to him or had he known that the note was for twenty-four thousand one hundred five dollars . and thirty-three cents ($24,105.33), and that he relied wholly upon the statements of said James Murphy, the president of the James Murphy Harms Supply Company and the business manager of the Farmers Co-Operative Supply Company of Hitchcock when he endorsed his name upon the back of said note.

"The court further finds that the defendant Hitchcock State Bank holds said note at the present time as collateral to some indebtedness due said bank from the James Murphy Harms Company, but the said Hitchcock State Bank was not a holder before maturity or in due course, and that said bank has other collateral to protect its loan.

"The court further finds that there was no consideration received by the plaintiff or advantage gained by him in any manner for endorsing his name upon the back of said note. That there was no consideration received by the Farmers Co-Operative Supply Company of Hitchcock for the giving of said note at the time said note was given and the defendant James Murphy Harms Supply Company parted with no consideration or right at the time of taking of said note."

And the court made, among others, the following conclusions of law:

"That the plaintiff was deceived and defrauded and misled by the statements of James Murphy at the time of his endorsing the note hereinbefore described and described in plaintiffs complaint,

498

and that plaintiff's signature to the back of said note was procured by fraud and misstatements and deceit of the said James Murphy, who was acting on behalf of the James Murphy Harms Supply Company in said transaction and plaintiff's signature was therefore obtained by fraud and deceit.

"The court further concludes that there was no consideration at the time for said endorsement upon the back of said note, or for the giving of said note, and that plaintiff is entitled to the relief prayed for in his complaint, to have his name as endorsed upon the back of said note described in the complaint dated June 24, 1921, payable to James Murphy Harms Supply Company given in the sum of twenty-four thousand one hundred five dollars and thirty-three cents ($24,105.33), due October 1, 1921, bearing interest at 8 per cent per annum and signed upon the face thereof, Arthur Miller, Pres., Fred H. Payne, Sect., and endorsed upon the back thereof Arthur Miller, Pres., Fred H. Payne, Secty., S. C. Warfield, Ernest Hofeman, B. F. Fuller, canceled, and plaintiff is entitled to judgment relieving him from any liability by reason of said endorsement."

Like findings and conclusions in apt languauge for the particular cases were made in each of the other seven cases, and, upon such findings and conclusions, judgment was entered for the plaintiff in each of the eight cases, respectively, for the relief demanded in the complaint, from which judgments and from orders denying a new trial in each case defendants have attempted to appeal.

The matters chiefly sought to be reached by the appeals in each case were, first, that the evidence was insufficient to support the findings; and, second, that the court erred in the admission of certain testimony over the objection of defendants at the trial.

These cases were previously before this court on motion to dismiss, and we held (Fuller v. Anderson, 50 S. D. 568, 210 N. W. 992) that the circuit court was without jurisdiction to make its order denying new trial in each of these cases at the time it purported to make such order, and that such order in each case was void, and that the appeals, so far as they purported to be from the orders denying new trials, would be dismissed. The status of these eight appeals (being numbered in the office of the clerk of this court as cases No. 6314-No. 6321, both inclusive) is therefore that of appeals from the respective judgments only.

██ It is manifest, and we understand appellants now to concede, that the question of the sufficiency of the evidence to sustain the findings made by the trial judge will not be considered by this court on appeal from the judgment only. See Keyes v. Baskerville, 42 S. D. 381, 175 N. W. 874.

██ Appellant does contend, however, that, inasmuch as there is in fact before this court a settled record in this case, including an abstract of all the testimony, that this court, even though there was no valid motion for new trial or appeal therefrom, should nevertheless upon an appeal from the judgment alone consider whether or not the appellant was prejudiced by improper rulings of the court below upon the admission or rejection of testimony to which exception was duly taken and upon which error is here assigned. We incline to the view, under the circumstances of this case, that appellant is correct in this contention. See Keyes v. Baskerville, supra, and cases cited; Williamson v. Voedisch Jewelry Co., 35 S. D. 390, 152 N. W. 508.

██ We will therefore give our attention in the particular case above entitled to the errors of law which the court is claimed by appellant to have committed in rulings upon admission or rejection of testimony.

It would be pointless, we think, to set out each question or each particular ruling upon which error is predicated. The general substance of the proposition sought to be reached by all these assignments of error having to do with admissibility of evidence is this: The trial judge permitted the Plaintiffs Fuller, Warfield, Hofemann, and Payne, and also Arthur Miller, whose name appears upon the two notes involved, but who is not a party to any of the eight action, and who has instituted no actions with reference to said notes, and also Roy Warfield, who is not a party to the notes or any of the actions, but is a son of S. C. Warfield, plaintiff in two of the actions, to testify fully to the circumstances under which the signatures were obtained and to what was said and done at that time by James Murphy, deceased, and what representations were made by him and relied upon by plaintiffs.

All this testimony was admitted over appellants' objection that the same was inadmissible, first, because it was oral evidence in contradiction of a written instrument; and, second, because it had

to do with a transaction with or statement by a decedent, and was therefore inadmissible under the provisions of subdivision 2, § 2717, Rev. Code 1919, reading as follows:

"In civil actions or proceedings by or against executors, administrators, heirs at law or next of kin in which judgment may be rendered or order entered for or against them, neither party nor his assignor nor any person who has ever had any interest in the subject of the action adverse to the other party, or to his testator or intestate, shall be allowed to testify against such other party as to any transaction whatever with or statement by the testator or intestate, unless called to testify thereto by the opposite party. But if the testimony of a party to the action or proceeding has been taken and he shall afterwards die and after his death the testimony so taken shall be used upon any trial or hearing on behalf of his executors, administrators, heirs at law or next of kin, then the other party shall be a competent witness as to any and all matters to which the testimony so taken relates."

As to the first ground of objection, it is too elementary to require the citation of any authorities that the so-called "parol evidence rule" does not operate to prevent establishing, as against the payee or persons standing in his shoes, failure or absence of consideration for a promissory note or that signatures thereto were secured by the payee's fraud, misrepresentation, and deceit, and not otherwise.

As to the second proposition, it will be remembered that in this particular case the defendants are the Murphy Corporation and the Hitchcock State Bank. The note here involved was payable to the Murphy Corporation. James Murphy personally was never at any time a party thereto. This action is not by or against an executor or administrator or heirs at law or next of kin of any one, and no judgment in this action is either for or against the executor, administrator, heirs at law, or next of kin of any decedent, nor can it be. It is entirely clear that the plain words of subdivision 2, § 2717, Rev. Code 1919, do not embrace this case, and, as this court has several times stated (Bunker v. Taylor, 10 S. D. 526, 74 N. W. 450; Hanson v. Fiesler, 49 S. D. 442, 207 N. W. 449), we have no disposition to extend these exclusions beyond the express language of the statute.

We are therefore of the opinion that the court committed no

error in this case in admitting such testimony, and the judgment appealed from is affirmed.

SHERWOOD, P. J., and POLLEY, BURCH, and BROWN, JJ., concur.