ENGLER, Respondent, v. IPSWICH PRINTING COMPANY, Appellant.

(256 N. W. 132.)

(File No. 7539.   Opinion filed July 30, 1934.)

*H. L. Woodworth* and *James W. McCarter,* both of Ipswich, for Appellant.

*J. M. Berry,* of Ipswich, for Respondent.

WARREN, J.   Respondent in March, 1927, began working on the Ipswich Independent, a newspaper operated by one Frank J. Tracy.   Respondent had had some thirteen years' newspaper business experience, eleven years of which had been devoted to work on the Wessington Springs Republican.   In September of the same year Mr. Tracy purchased two other newspapers; namely, the Ipswich Tribune and the Roscoe Independent.   In October, 1927, articles of incorporation of the Ipswich Printing Company were filed in the office of the secretary of state at Pierre, S. D.   The directors' names were Frank J. Tracy, Iris I. Hart (the respondent), and Mary F. Tracy, who were to serve until their successors were elected.   The articles of incorporation were signed by the above, and the secretary of state issued a certificate of incorporation; the purpose of the corporation being to publish a newspaper and do general job printing.   The three newspapers, together with the business and physical property, were taken over by the corporation.   A stock book was procured and certificates of shares of stock were issued, one of them to the respondent.   Shares of stock

were also issued to a Mr. O'Neil and a Mr. Rogers, fifty shares to Tracy, and one share to his wife, Mary F. Tracy. Several shares of stock were later issued. No actual stockholders' meetings seem to have been held, but it would seem that Mr. Tracy, by virtue of his ownership of the Ipswich Independent, and having the majority of stock in the corporation, took active charge in directing what should be done. It seems quite conclusive that Mr. Tracy told the respondent that he himself was the president, that the respondent was the secretary, and that Mary F. Tracy was the treasurer; that he was responsible for procuring the stationery to be used by the company, and instructed respondent as to the printing that was to be placed upon the letterheads, which showed the following: "The Ipswich Tribune, Ipswich Printing Inc. (also the names of) Frank J. Tracy, President, Iris I. Hart, Secretary and M. F. Tracy, Treasurer." Mr. Tracy further informed the respondent that she was to be the manager and to deposit all money in the Bank of Ipswich, First State Bank of Ipswich, and First State Bank of Roscoe. No money was paid into the corporation for any of the stock issued, and all the property from the three newspapers was turned over to the Ipswich Printing Company and shares of stock were issued. A thousand dollars apiece was received from Rogers and O'Neil. That money was paid by Tracy to Johnson for the purchase of the Ipswich Tribune, and stock was issued to Rogers and O'Neil for the money loaned to the corporation. In June, 1928, Frank J. Tracy died, and the plaintiff continued to manage the business up until April, 1931. On April 19, 1932, the plaintiff began an action to recover the sum of $695 as the balance due her for the reasonable value of her services for the regular work performed and $2,000 for the extra time, overtime, and work she had given the business as per an agreement entered into between the plaintiff and Frank J. Tracy. The jury returned a verdict for the plaintiff, and a judgment was entered thereon. Defendant moved for a new trial. The trial court overruled the defendant's motion, and defendant thereafter appealed from the judgment and order overruling the motion for new trial.

Appellant, through its assignments of error, complains of various rulings of the trial court, the court's failure to direct a verdict, the insufficiency of the evidence, and the court's failure

to grant a new trial upon newly discovered evidence. No exceptions were taken to the instructions given by the circuit court.

It is respondent's contention that she was offered and accepted a proposition to continue work until March 10, 1928, for $40 per week, and that thereafter she was to be paid $50 per week; this salary being increased because of the extra work that she had to do on account of the consolidation of the three newspapers. She further contends that Mr. Tracy also stated that, if she would pay off the outstanding debts and redeem the stock that was out against the Ipswich Printing Company, she would be paid $2,000 for her overtime, extra work, and for the extra hours that she would have to put in. This proposition respondent accepted. The record shows that respondent, during the entire time that she managed the paper, put in long hours, made a success of the business venture, and increased the business of the plant. Money was accumulated, and there is ample evidence to warrant the jury in finding that she was entitled to remuneration for the services which she had so satisfactorily rendered.

Appellant insists that the Ipswich Printing Company was not a corporation; that it had had no meeting of the stockholders, no directors had been elected, and that there was no meeting of the directors and hence no employment of the respondent; that the statements and conversations of Mr. Tracy with the respondent were not admissible, for the reason that Mr. Tracy died before the commencement of the suit and the trial of the action.

From the evidence in the record before us there can be no question of the legality of the incorporation under the form of attack made by appellant. The appellant is defending under its corporate existence. There was a certificate of incorporation issued by the secretary of state. Under section 239, 1919 S. D. Revised Code, the appellant is precluded from challenging its own legal existence.

Appellant argues that the court committed error in admitting the testimony of respondent relating to conversations which had taken place between the deceased Mr. Tracy and respondent. The case of Wright v. Barnard (D. C.) 248 F. 756, 778, deals with conversations with deceased persons and in that connection said: "This court did not permit the complainant to testify as to any transaction with or statement by Barnard for the purpose of

securing in this suit a decree against his estate, but expressly declined to do so. Any such testimony given by the complainant is valueless and has been disregarded for that purpose, and no decree can properly be rendered against that estate unless the complainant has established a demand against it by evidence wholly aside from his own testimony as to such transactions with or statements by Barnard. *But testimony given by him as to transactions with or statements by Barnard in his official capacity as representing the company, for the purpose of securing a decree against it, is on a different footing."* (Italics ours.) See, also, Lowrey v. Hawaii, 206 U. S. 206, 27 S. Ct. 622, 51 L. Ed. 1026.

The testimony shows that Tracy directed respondent as to what work she was to perform and as to the salary she was to be paid. The evidence is to the effect that Mr. Tracy was the promoter of the corporation and assumed the direction of the entire business and that the stockholders acquiesced in what he did.

"As said in 1 Morawetz on Private Corporations (2d Ed.) § 538:

" 'There can be no doubt that the board of directors may invest the president with authority to act as chief executive officer of the company. This may be done either by an express resolution, or by acquiescence in a course of dealing. A person dealing with the president of a corporation in the usual manner, and within the powers which the president has been accustomed to exercise, without the dissent of the directors, would be entitled to assume that the president had been actually invested with those powers.'

"The contract with Dunlap was not a contract with respect to the disposition of the company's property or to change its policies, or to increase its liabilities for new equipment. It was a contract for the employment of labor for the necessary conduct of its established business. The authority to make such contracts for the reasonable execution of the company's business is as clearly incidental to the president's office as the authority in the case supra to employ laborers to do work on the property of the railway company and to charge the company therewith. * * *" Radford Water Power Co. v. Dunlap, 128 Va. 658, 105 S. E. 257, 262.

And also in Union Motor Company v. Taylor, 206 Ky. 398, 267 S. W. 170, 171, on this same question the court said: "This is unquestionably the general rule, but upon the other hand authori-

ties are abundant that a corporation within its power may be bound by the manner in which it permits its officers in the regular course of business to conduct its affairs, even though there is no formal delegated authority for such officer to so act, and this, too, even though the act of an officer was in violation of express and formal direction, if by subsequent action the board had ratified such action or had merely acquiesced therein."

After the organization of the corporation, he became its active directing power, and his knowledge was therefore the knowledge of the corporation, and the corporation was therefore bound by his acts, and no express acceptance was necessary in the procuring of the services of the respondent. See Wolf v. Ideal Sheet Metal Works, 209 Ill. App. 252; Koenig v. George Logemann & Sons Co., 170 Wis. 619, 176 N. W. 58; Huron Printing & Bindery Co. v. Kittleson et al., 4 S. D. 520, 57 N. W. 233.

■■ We are of the opinion that this testimony was admissible, not for the purpose of establishing an express contract, but for the purpose of showing that respondent did the work as directed, and that Mr. Tracy's knowledge of this agreement was knowledge to the corporation, and was also admissible for the purpose of showing the reasonable value of the services performed, and tended to throw light upon the theory of recovering the reasonable value of the services rendered, less the sums which had been paid. This testimony could not be rejected upon the theory that, as a stockholder, respondent was not in a position to make the same claim that a third person could make. A stockholder who performs labor for a corporation occupies no different position in the recovery for services rendered to a corporation than a third person. The authorities collated fully warrant the statement of the law summed up in 14 C. J. 874:

"§ 1288. A person is not precluded from recovering for personal services rendered to the corporation by the fact that he is a stockholder. The question whether there existed an express or implied promise to pay for his services is one of fact, and his relationship is evidentiary matter bearing on this issue, but that is the only effect it has on his right to recover. * * *"

"§ 1289. Stockholders, as such, are not creditors of the corporation, but they may, by virtue of bona fide and independent dealings with the company, become creditors, and as such stand on an

equality with, and possess all the rights and remedies of, any other creditor in securing, protecting and enforcing their claims, providing they have not limited their right by agreement. * * * "

■ The stockholders of the corporation had full knowledge that the respondent was engaged in the managing of its affairs. The record before us shows that at the time she took over the business the income was about three or four hundred dollars per month, and that at the time of the termination of her employment the business had been increased up to between one thousand and twelve hundred dollars per month.

The record further shows that she paid up the indebtedness and turned over the business free from debt; that all equipment and stock was also fully paid up. The corporation therefore received the benefits of not ordinary but exceptional services, which services, in addition to respondent's ability, consisted of vigilance and long hours of overtime work far beyond those contracted for. Therefore, having voluntarily accepted the benefits derived from the employment of the respondent and having accepted the benefits derived from the employment of the respondent and having accepted the benefits of the agreement executed in its behalf by Mr. Tracy, the corporation is bound by such agreement, regardless of the question of the officer's original authority to enter into such an agreement. On this point there are innumerable authorities which agree that, having accepted the benefits of a contract or agreement made for it by an officer, a company cannot escape its liability under such a contract or agreement. In the case of Mutual Oil Co. v. Hills (C. C. A.) 248 F. 257, 261, the court said:

"It is said that the contract was not expressly authorized, and was not within the implied powers of the president of the defendant company, and that there never was a subsequent ratification of the agreement. But it is plain that Greenlees, when he made the contract, had general control over the management of the business of the defendant company, and it is found that the corporation, with knowledge on the part of the incorporators and directors and secretary, accepted the benefits of the services of the plaintiff, acquiesced in the arrangement, and for several years failed to make any objection thereto. Under such circumstances it does not help the defendant that the contract was not formally brought before the board of directors until 1912, for the corporation will

be bound by the contract." See, also, Bostwick v. Mutual Life Ins. Co. (C. C. A.) 251 F. 36; in re Grocers' Baking Co. (D. C.) 266 F. 900; Butler v. Solano Land Co., 46 Cal. App. 171, 188 P. 1019; Rauer v. Fernando Nelson & Sons, 53 Cal. App. 695, 200 P. 809; Dedrick v. Ormsby Land & Mortgage Company et al, 12 S. D. 59, 80 N. W. 153.

That a corporation which received the benefit of an employee's services cannot defeat liability on the ground that the so-called president was without authority to hire said employee is the holding by the Supreme Court of Washington in the case of Weaver v. General Metals Merger, 167 Wash. 451, 9 P. (2d) 778, 779. Therein the court said: "It is next contended that, if the oral agreement mentioned was made by Gabryel, he did so without authority, and it was not binding upon the appellant. Upon this question, it is sufficient to say that the trial court found, and the evidence shows, that the appellant had received the benefit of the services of the respondent, and it will not now be heard to say that it should not pay for the same. McKinley v. Mineral Hill Consolidated Mining Co., 46 Wash. 162, 89 P. 495, Keyes v. Citizens' State Bank, 128 Wash. 658, 224 P. 2."

The respondent clearly established her right to recover, and, in the absence of evidence to the contrary, it will be presumed that Mr. Tracy had authority to contract for the services of the respondent. Smith v. McKee, 55 S. D. 573, 226 N. W. 766; Stablein v. Hutterische Gemeinde, 43 S. D. 54, 177 N. W. 810.

The situation in the instant case is much similar to that in Davis v. Brown County Coal Company, 21 S. D. 173, 179, 110 N. W. 113, 115, and it must be controlled by what the court said therein: "Though the powers of a corporation are generally exercised by a board of directors, it may, without a formal resolution, delegate authority to one or more of its officers to enter into a binding contract with reference to a matter within the purpose of its creation. Moreover, the ratification of a contract not especially authorized may be implied by acquiescence, or from corporate acts without expressly accepting its terms. Huron Printing & Bindery Co. v. Kittleson, 4 S. D. 520, 57 N. W. 233; Salem Iron Co. v. Consol. Iron Mines, 112 F. 239, 50 C. C. A. 213."

Again in Werre v. Northwest Thresher Co., 27 S. D. 486, 131 N. W. 721, 722, this court said: "It seems to be an elemen-

tary rule of law that where a person performed services for another, in good faith, under a void contract, not malum prohibitum nor malum in se, and where the other party has knowingly reaped the benefits of such services, that the person so performing the same may recover from the person receiving the benefits the reasonable value of such services upon the quantum meruit, irrespective of the contract, that under such circumstances the law implies a promise on the part of the person so receiving such benefit to pay what the same were reasonable worth."

The respondent entered the employ of Mr. Tracy before the corporation was formed and then continued in his employ, and her status is much the same as that disclosed in Kaeppler v. Redfield Creamery Co., 12 S. D. 483, 81 N. W. 907, and in Chase v. Redfield Creamery Co., 12 S. D. 529, 81 N. W. 951. The appellant argues that the respondent was disqualified from testifying as to a transaction with the deceased corporation president, Mr. Tracy. We feel that we correctly stated the rule in Fuller v. James Murphy Harms Supply Company, 54 S. D. 492, 223 N. W. 713, 716, wherein we said that "we have no disposition to extend these exclusions beyond the express language of the statute."

Appellant contends that a new trial should have been granted upon the showing of newly discovered evidence. Certain checks were not produced in evidence which appellant contends would change the result in the amount of the recovery. This the respondent disputes by stating that the statement that she produced in court contained the checks alluded to and that the salary check for $100 and the one for $250 were fully considered by the jury, and that it was immaterial whether or not the actual checks amounting to $350 were produced. The showing in the affidavits by appellant falls far short of the requirements which entitle one to a new trial upon the grounds of newly discovered evidence. There is a material dispute between the parties. The respondent and her husband by their affidavits positively stated that the stub book, which contained the stubs showing that said checks had been drawn, was in the office of the clerk of court at the time of the trial, and hence was accessible to the appellant. Upon the showing made by both parties upon the motion for a new trial, it is clear that the trial court was justified in ruling in favor of the respondent, as it would seem that the newly discovered evidence

consisted of written documents and was either in movant's possession or could have been readily obtained. Styke v. Sioux Falls Motor Company et al, 60 S. D. 358, 244 N. W. 387. The evidence seems sufficient to indicate that there was no secret agreement as inferred by appellant. Mrs. Tracy admits that respondent told her in the fall of 1930 that she claimed money for the extra hours of work she was doing. After that the respondent was permitted to continue her employment without objection. The evidence also shows that the respondent was working from fifteen to seventeen hours per day and also five to seven hours on Sundays. Appellant has received the benefit of these services, and the record fully warrants the verdict returned by the jury.

The order and judgment appealed from are affirmed.

ROBERTS, P. J., and POLLEY and RUDOLPH, JJ., concur.

CAMPBELL, J., not sitting.