STATE of South Dakota, Plaintiff and Respondent,

v.

David E. JENKINS, Defendant and Appellant.

No. 12114.

Supreme Court of South Dakota.

Dec. 21, 1977.

Peter H. Lieberman, Asst. Atty. Gen., for plaintiff and respondent; William J. Janklow, Atty. Gen., Pierre, on the brief.

Dale R. Hansen and Bruce A. Hubbard of Morrill & Hansen, Sturgis, for defendant and appellant.

BRAITHWAITE, Circuit Judge.

On April 9, 1976, the body of Gary Oster was found beside a road near Rapid City, South Dakota. Death was by strangulation. Several hours earlier appellant had contacted the police informing them he had been kidnapped by four Indians who got into his vehicle at a stop sign, they forced him to drive them around the countryside for several hours, and during this period they abused him both physically and sexually. Law enforcement personnel suspected a connection between the two and investigated them on that basis. Ultimately the investigation resulted in appellant's arrest and conviction for the murder of Gary Oster. Appellant contends his conviction should be reversed because of several errors committed by the trial court. Other pertinent facts will be referred to in connection with the various legal issues raised by the appeal.

## CORY LEMKE TESTIMONY

■ During opening statement the state had indicated a possible motive for the killing: that appellant and Oster had engaged in homosexual activities and the homicide was committed to conceal that fact. In an effort to combat this theory, appellant produced Cory Lemke to testify concerning a conversation he had with Oster some two or three months before the killing. If permitted Lemke would have testified that Oster told him he had been hitchhiking when a man picked him up and "started to get a little weird with him"; that he struck the man in the face and left the vehicle.

Appellant acknowledges the testimony is hearsay but claims it is admissible under the state-of-mind exception. This statement, however, reveals the state of mind at the time of the incident—not the time of declaration. Possibly it can be argued that there is a continuity of emotion; that evidence of the state of mind at the time of the event is some evidence that the same state of mind existed at the time of declaration. This possibility is treated in *McCormick on Evidence*, 2d Ed. 1972 § 294, p. 696:

"Since, however, the duration of states of mind or emotion varies with the particular attitudes or feelings at issue and with the cause, it is reasonable to require as a condition of invoking the continuity notion that the declaration mirror a state of mind which, in light of all the circumstances including proximity in time, has some probability of being the same condition existing at the material time. Where there is room for doubt, the matter should be left to the discretion of the trial judge."

The judge who presided over the trial exercised his discretion to reject the proffered testimony. We see no abuse of discretion.

## COURTROOM DEMONSTRATION

■ Appellant claimed the Indian holding the knife on him made a cut along the seam of the vinyl upholstery of his vehicle to prove it was sharp. Over appellant's objection a witness for the state was allowed to attempt to cut a piece of foam-backed vinyl with a razor blade. He was unsuccessful and so testified.

■ The conditions which existed at the time of an event can only rarely be exactly duplicated. The law only requires a substantial reproduction of those conditions in order to permit admissibility of test evidence. *Ewing v. Russell* (1965) 81 S.D. 563, 137 N.W.2d 892. This court has said that the trial judge is allowed some latitude in admitting the testimony. *Ewing v. Russell,* supra. The test facing the trial judge is one of weighing the probative value of the experiment evidence against the dangers of misleading the jury. *McCormick on Evidence,* 2d Ed. 1972 § 202. The ultimate weight to be given any piece of evidence is for the jury. In deciding whether courtroom demonstrations should be permitted, the trial court deals only with the threshold fact questions: (1) is the evidence relevant, (2) does it have probative value, and (3) is the recreation of conditions so dissimilar to the original event that, even after effective highlighting of the dissimilarities, the demonstration would be misleading to the jury. Judged by these standards we find no abuse

of discretion by the trial court in allowing the experiment.

### INSTRUCTIONS NO. 26 and 27

█ Instruction No. 26, with the exception of one word, is Pattern Jury Instruction 2–14–3. It correctly sets forth the law concerning duress. Instruction No. 27 is the second paragraph of Pattern Jury Instruction 3–7–350b tailored to cover duress rather than self-defense. Instruction No. 27 added nothing. Under either instruction the jury was advised that they should acquit the appellant if the state did not prove beyond a reasonable doubt that he was not acting under duress. Perhaps the jury might have wondered why both instructions were included, but that would have been the limit of their confusion. We cannot see how inclusion of Instruction No. 27 confused them as to the applicable law.

### PHYSICIAN–PATIENT PRIVILEGE

Prior to trial appellant consulted Dr. Phillip Stack and Dr. L. Norman Gray. Dr. Stack was a psychologist at the South Dakota Human Services Center where appellant had voluntarily committed himself. At the trial, over appellant's objection, Dr. Stack testified as to certain admissions made by the appellant during the course of his stay at the Center. Appellant consulted Dr. Gray concerning injuries he may have received when he was kidnapped and assaulted by the persons who commandeered his car. Over appellant's objection Dr. Gray was allowed to testify as to the results of his examination.

SDCL 19–2–3 provides:

"A physician or surgeon, or other regular practitioner of the healing art, cannot, without the consent of his patient, be examined in a civil action as to any information acquired in attending the patient which was necessary to enable him to prescribe or act for the patient."

Appellant concedes that were this section to stand alone it would afford him no protection. However, he claims that privilege is extended to criminal actions under the terms of SDCL 23–44–9:

"The rules of evidence in civil cases are applicable also to criminal cases, except as otherwise provided in this title."

This is a question of first impression in South Dakota. Cases from other jurisdictions cited in the briefs involve statutes worded differently than ours. For that reason we find none of them to be persuasive.

At the time appellant was consulting these two doctors, our code contained seven statutory privileges:

Confessions to clergymen. (19–2–2)
Attorney client. (19–2–4)
Communications to public officer. (19–2–5)
Husband-wife. (19–2–1)
Physician-patient. (19–2–3)
Elementary or secondary school counselor-student. (19–2–5.1)
College or university counselor-student. (19–2–5.2)

Five of the seven make no distinction between criminal and civil actions. The husband-wife privilege statute explicitly provides an exception in certain types of criminal actions; the physician-patient privilege statute speaks in terms of civil actions and is silent as to criminal ones. Though none of the other five statutes make any distinction between criminal and civil proceedings, most of them do contain some exceptions to the privileges.

All of the statutory privileges listed above, except communications to a counselor, were enacted at the same time. Viewing those statutes together, we find compelling the conclusion that use of the phrase "in a civil action" in SDCL 19–2–3 was deliberate. The Legislature would have no more clearly manifested its intent if it had added the words "and not in criminal proceedings."

█ Nor is the privilege made applicable to criminal actions by SDCL 23–44–9. It may not be used to provide a privilege in criminal cases where the Legislature has clearly manifested a contrary intent in SDCL 19–2–3. The general statute must fall in the face of the specific one. We hold

that the physician-patient privilege set forth in SDCL 19–2–3 does not apply in criminal proceedings and the trial judge was correct in admitting the testimony of Doctors Stack and Gray.

## OPINION TESTIMONY

During his direct examination Dr. Stack testified appellant had admitted to killing Oster; that after the Indians had commandeered his car and forced him to engage in certain sexual activities they kidnapped Oster; that he and Oster were forced to perform homosexual acts; and that under threat of death the Indians forced him to kill Oster. Dr. Stack was then asked:

Q Now, doctor, excuse me. From these projective tests and having qualified and being a trained clinical psychologist with over twenty years experience, were you able to form an opinion as to the veracity of the truth of whether or not there were Indians present that night with David Jenkins?

Over defense objection Dr. Stack was then allowed to express his opinion that the Indians were not present and in some detail give his reasons for so believing. His direct examination concluded as follows:

Q So from that you reach the conclusion that on this particular morning of the 9th there were no Indians present, is that fair?

A Yes, I would say.

■ During the course of the trial appellant admitted killing Oster. The only issue presented to the jury for decision was whether he did so under duress supplied by the Indians who had commandeered his car. Though the wording of the first question quoted above is somewhat obscure—the second is crystal clear. The doctor was being asked whether he believed the defense which had been interposed. Admission of that testimony was error.

Inasmuch as the only issue before the jury was the question of duress, the doctor was in essence allowed to express his opinion that appellant was guilty. *McCormick on Evidence*, 2d Ed. 1972 § 12, p. 26 states:

"Undoubtedly there is a kind of statement by the witness which amounts to no more than an expression of his general belief as to how the case should be decided or as to the amount of unliquidated damages which should be given. It is believed all courts would exclude such extreme expressions (citing cases). There is no necessity for this kind of evidence; to receive it would tend to suggest that the judge and jury may shift responsibility for decision to the witnesses; and in any event it is wholly without value to the trier of fact in reaching a decision."

See also *State v. Wilson*, 4 S.D. 535, 57 N.W. 338 (1894).

The doctor here was asked to give an opinion on the validity of the defense. That simply is not a fit subject for expert testimony.

■ Additionally, while a witness may testify as to a person's reputation in the community for truth and veracity, he may not give his own opinion. In essence this is what the doctor was permitted to do. Such an extension of the rule allowing reputation testimony would open the floodgates to trial of the veracity of witnesses by psychiatrists, psychologists and polygraph examinations. It would virtually abolish the historic and cherished concept that a jury of twelve fellow citizens is the proper tribunal for judging credibility.

The state contends that any possibility the jury would abdicate its functions to Dr. Stack was forestalled by the court's Instruction No. 25, which was Pattern Jury Instruction 1–17–4 concerning expert witnesses. But that simply compounded the error because the jury should not have been allowed to hear the doctor's opinion or give it any weight whatsoever.

SDCL 23–1–2 provides that an error in any trial does not render the verdict invalid unless it actually prejudiced the defendant or tended to his prejudice in respect to a substantial right. A long line of decisions in this state, culminating in *State v. Beene* (1977) S.D., 257 N.W.2d 589, has done nothing more than paraphrase the statute and

come to the conclusion that it depends upon the facts in each case. Here the error went to the very guts of the defense. A witness who had twenty years of experience as a psychologist—who had given the appellant tests which were beyond the comprehension of the jury—was allowed to state that as an expert he believed the defense was a fabrication. Further, he was allowed to give a lengthy explanation of his reasons—an explanation which could have well made his opinion seem convincing to jurors. At a very minimum the error "tended to his prejudice" within the meaning of SDCL 23-1-2.

The judgment of conviction is reversed and the case is remanded to the trial court for proceedings not inconsistent herewith.

All the Justices concur.

BRAITHWAITE, Circuit Judge, sitting for ZASTROW, J., disqualified.