STATE of South Dakota, Plaintiff
and Appellee,

v.

Steven LOGUE, Defendant
and Appellant.

No. 14729.

Supreme Court of South Dakota.

Argued April 9, 1985.

Decided July 31, 1985.

Frank Geaghan, Asst. Atty. Gen., Pierre, for plaintiff and appellee; Mark V. Meierhenry, Atty. Gen., Pierre, on brief.

Joseph Neiles, of Zimmer, Richter, Duncan & Neiles, Parker, for defendant and appellant.

WUEST, Acting Justice.

This is an appeal from a judgment and conviction of two counts of rape and one count of sexual contact with a child. We reverse and remand for a new trial.

On May 2, 1984, a Minnehaha County Grand Jury indicted Steven Logue (appellant) on two counts of first-degree rape, in violation of SDCL 22–22–1(4), and one count of sexual contact with a child under fifteen, in violation of SDCL 22–22–7. Appellant was arraigned and entered a plea of not guilty, whereupon motion hearings were held in preparation for a jury trial in Minnehaha County. The trial court granted appellant's motion for an examination and hearing to determine the competency of the alleged victim as a witness, who was then four years old. The court, however, did not allow appellant to have the child examined by an expert of appellant's choice.

At the competency hearing the child was questioned by the prosecutor and by appellant's attorney. The State called Trudy Schroeder, a social worker with the South Dakota Department of Social Services, concerning contacts she had with the child, which included two interviews and a trip to a restaurant. The trial court ruled that, inasmuch as the young boy knew the difference between lying and telling the truth, he was competent to testify and his credibility was a matter to be determined by the jury.

The trial court denied a motion to make the indictment more definite and certain, or dismiss. At trial, the State's first witness was the alleged victim's mother. She testified that, while a neighbor lady was her usual babysitter, on April 5, 1984, she had a woman named Peggy Anderson watch her children. Ms. Anderson had babysat for her once before. The mother stated she told Peggy Anderson that she did not want anyone else in the house while she was away. Further, she testified that she left for work at 5:45 a.m. and returned about 3:15 p.m. When she came home that day, she sat down to talk with Ms. Anderson and asked her how the children were doing. She asked where her son was and Ms. Anderson stated that he was lying on the bed playing. The mother testified that she thought something might be wrong because her son was too "hyper" to play on the bed. He had been diagnosed as being hyperactive and took medication for that malady.

The mother further testified that both she and Ms. Anderson moved toward the rear of her mobile home, where the bedrooms are located. As they did, appellant Steven Logue emerged from the mother's bedroom. At that point, Ms. Anderson commented that the child must be hiding, and appellant stated that the child was in the bathroom. Ms. Anderson went to the bathroom and returned stating that he was there. The mother went to check on him and found him standing in the corner by the closet with no pants on. Apparently, this bathroom was located in the same bedroom that appellant emerged from. She stated that her son normally did not take his pants entirely off to go to the bathroom, and that they did not appear wet when he put them back on.

Ms. Anderson testified that appellant did not arrive at the trailer until about 3:30 that afternoon and the mother had told her only that the mother's sister-in-law and bill collectors were not allowed in the house. She denied the fact that the mother said anything about appellant's presence in the home. She also claimed that appellant and the young boy were never in the bedroom at the same time. Ms. Anderson stated that she was talking on the telephone when the mother came home and appellant was in the front bathroom, while the child was in the rear bedroom.

The mother gave appellant and Ms. Anderson a ride to McKennan Hospital. Upon

returning home, she checked her jewelry boxes, for she apparently suspected Ms. Anderson or appellant in the theft of a necklace that was missing after the last time Ms. Anderson watched her children. She discovered a ring missing.

The mother testified that on the following day the alleged victim complained of constipation and kept crying that his bottom hurt. She stated that she had him soak in the bathtub, yet he still complained of pain. She examined him and could find nothing wrong. The mother said that later on, when the child was playing with his younger brother, she overheard him ask: "Are you going to stick that in my butt?" This statement was objected to as hearsay but the State argued that it should be allowed as an excited utterance exception to the rule against hearsay and the court agreed, overruling the objection.

The mother further testified that she asked him whether anyone had stuck anything in his posterior and where he had heard such a statement. She said that he answered by asking if it was "naughty," and claimed that his younger brother "put toilet paper in [his] butt." He then said that it could have been somebody else. At this point, appellant's counsel objected again, and requested a continuing objection to the testimony as hearsay. The mother then claimed that the child said that Peggy's boyfriend did it.

On the following day, the child had a bowel movement and the mother testified that he had a little bit of stool and "a bunch of white stuff come out in the toilet." She then called her doctor, who advised her to take the young boy to the hospital to be examined. He was taken to McKennan Hospital and examined in the emergency room by Dr. Jeff Wheeler. Dr. Wheeler testified that in his examination of the alleged victim he found no evidence of external trauma. He did not find any foreign body or retrieve any bloody stool in his finger exam. He testified the stool he retrieved for blood and found none. Further, he did an X-ray of the rectum area looking for a foreign body and found none.

Dr. Wheeler testified that any evidence which may have been there could have disappeared in the four intervening days, and, therefore, he could not rule out molestation.

Ms. Schroeder was then called by the State. As stated supra, she is a social worker for the South Dakota Department of Social Services and has a Bachelor of Science Degree in Community Services, which is a social work degree with emphasis on psychology and public administration. She testified that she had been in the field for approximately ten years, seven of which were in direct social work and three in administration. Ms. Schroeder stated that she has had continuing education in the areas of interviewing techniques with children, sexual abuse, and working with offenders and victims. At the time of the trial, she was working in the area of child protection, which involves investigating child abuse and neglect. She testified that in the seven months prior to the trial she had interviewed forty-seven children. Further, over appellant's objection, she testified that in about one-third of the cases of sexual abuse, the claims were, in her opinion, unsubstantiated. She then testified about her interviewing techniques and their purposes.

Ms. Schroeder testified about her contacts with the alleged victim. She stated that her first interview with the victim was for general information and the second interview was used to get more details and elicit information concerning his knowledge of sexual matters, in an attempt to determine the source of that knowledge. She was then asked what she concluded with regard to the source of the victim's knowledge of sexual matters. Appellant objected to this as hearsay. The jury was excused, and the State argued that Ms. Schroeder should be allowed to give her opinion as to whether the boy gained the information from observation, his parents, or from actual experience. Appellant argued that this was essentially asking for expert testimony on the credibility of a witness. The court overruled the objection,

but allowed a continuing objection to testimony by Ms. Schroeder concerning conclusions about credibility and hearsay statements.

Thereafter, however, Ms. Schroeder was allowed to testify concerning what the alleged victim told her about the incident in question. She was then asked:

Q. Based on his answers to those questions, what were your conclusions as to where he had acquired his sexual knowledge?

A. That particular knowledge, I believe he gained, through the experience with Steve.

Despite the continuing objection granted by the court, appellant again objected to such testimony and moved that it be stricken. This request was denied by the trial court.

The child also testified, and, although he was not placed under oath, no objection was raised by appellant's trial counsel. At the direction of the prosecutor, the child indicated certain things with two dolls. After going through a discussion and demonstration with the dolls, the prosecutor commented "I guess I would like the record to reflect that at this time the dolls are in the anal sex position." This was objected to and overruled.

The prosecutor then asked the young boy what the man did with his "peter" and he replied: "stuck it in there," indicating the posterior of the smaller doll. He also stated that the man inserted toilet paper in the little boy's posterior. Also, he testified that the man had the little boy insert the little boy's "in there." As to this, the prosecutor indicated the sexual contact charge related to the victim's being forced to perform penile-anal penetration on appellant.

The only other witness to testify was a man named Tim Parker, who testified that he was with appellant during the day of the incident in question, until about 3:00 or 3:15 p.m., which verified the testimony appellant gave as to the time he was dropped off at the alleged victim's residence.

On June 27, 1984, the jury returned a verdict of guilty on all counts. On September 4, 1984, the court sentenced appellant to twenty years in the South Dakota State Penitentiary on Count I, twenty years on Count II, and five years on Count III; all sentences to run consecutively. Appellant appeals.

 Appellant contends that since the language of Counts I and II is identical, the court erred in denying his motion to make more definite and certain or to dismiss. We disagree. In resolving this argument, the test for the sufficiency of an indictment is whether it is designated in such a manner as to enable a person of common understanding to know what was intended. SDCL 23A-6-7(5). It must contain the elements of the offense charged so as to inform the defendant of the charge against him and enable him to plead an acquittal of conviction in bar of future prosecutions for the same offense. An indictment is generally sufficient if it employs the language of the statute or its equivalent. *State v. Bingen*, 326 N.W.2d 99 (S.D.1982); *State v. Lange*, 82 S.D. 666, 152 N.W.2d 635 (1967). A review of the indictment establishes that these requirements were satisfied in that the counts, as drafted, employed the requisite statutory language.

The discovery materials given to appellant were clear as to what happened. The social worker's report indicates where the two counts came from; one being penile-anal penetration and the other being object penetration. The State's evidence was in accordance therewith. Consequently, appellant had notice of the State's evidence and could plead double jeopardy in bar of future prosecutions for the same offense.

 Appellant claims the trial court erred when it overruled his pretrial motion for a psychiatric examination of the child. Psychiatric examinations of complaining witnesses in sexual offense cases may be ordered upon a substantial showing of need and justification. *State v. Wounded Head*, 305 N.W.2d 677 (S.D.1981). The purpose of such examinations is to detect mental or moral delusions or tendencies which would

distort the imagination and would affect the probable credibility of the complaining witness. There were no indications, nor did the appellant make any allegations, that the young child suffered from any such delusions and we believe that the trial court did not abuse its discretion in overruling this motion. *State v. McCafferty*, 356 N.W.2d 159 (S.D.1984).

Appellant further contends that the trial court committed reversible error in allowing the State to elicit expert testimony from the social worker as to where the four-year-old victim gained his sexual knowledge. We agree.

■ At the outset, we acknowledge that the trial court has broad discretion concerning the qualification of experts and the admission of expert testimony. The trial judge's decision as to such matters will not be reversed on appeal absent a clear showing of abuse of that discretion. *Flagtwet v. Smith*, 367 N.W.2d 188 (S.D.1985); *Matter of J.L.H.*, 316 N.W.2d 650 (S.D.1982); *State v. Lachowitzer*, 314 N.W.2d 307 (S.D. 1982). In this instance, however, we believe that such a clear showing exists regarding the social worker's conclusions as to where the victim gained his sexual knowledge. SDCL 19–15–2 provides:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

■ As this court ruled in *J.L.H., supra,* a social worker may qualify as an expert on certain issues under this statute. Appellant argues, however, that there are certain issues which can never be the subject of expert testimony. Appellant relies on

our decision in *State v. Jenkins*, 260 N.W.2d 509 (S.D.1977), wherein we held it reversible error to permit a psychologist qualified as an expert witness to give his opinion as to the validity of appellant's duress defense to a charge of murder. There, we stated that "[i]nasmuch as the only issue before the jury was the question of duress, the doctor was in essence allowed to express his opinion that appellant was guilty.... That simply is not a fit subject for expert testimony." 260 N.W.2d at 513.[1] This statement is in accord with the rule sometimes called the Ultimate Fact Doctrine, which contained strictures against allowing witnesses to express opinions upon ultimate issues, as a particular aspect of the rule against opinions. Weinstein's Evidence ¶ 704–1. The basis for the rule, however, to prevent the witness from "usurping the province of the jury," has been criticized as "empty rhetoric." 7 Wigmore § 1920 (1940). Rule 704 of the Federal Rules of Evidence opposes this doctrine, stating that: "Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact."

South Dakota, however, has no rule comparable to Federal Rule 704. SDCL 19–15–4 states:

An expert witness may be asked to state his opinions or inferences, whether these opinions or inferences are based on the witness' personal observation, or on evidence introduced at the trial and seen or heard by the witness, or on his technical knowledge of the subject, without first specifying hypothetically in the question the data on which these opinions or inferences are based. An expert witness may be required, on direct or cross-examination, to specify the data on

1. We cited *McCormick on Evidence*, 2d Ed., 1972, § 12, p. 26, which states:
 'Undoubtedly there is a kind of statement by the witness which amounts to no more than an expression of his general belief as to how the case should be decided or as to the amount of unliquidated damages which should be given. It is believed all courts would exclude such extreme expressions (citing cases). There is no necessity for this kind of evidence; to receive it would tend to suggest that the judge and jury may shift responsibility for decision to the witnesses; and in any event it is wholly without value to the trier of fact in reaching a decision.'

which his opinions or inferences are based.

Nonetheless, an earlier decision of this court adheres to Rule 704, and is in direct contravention with the decision in *Jenkins, supra.* In *State v. Spry,* 87 S.D. 318, 207 N.W.2d 504 (1973), appellant was convicted of manslaughter as the result of an automobile collision which claimed two victims. At the trial, the State relied heavily on the testimony of Clyde McCue, a highway patrolman who had investigated the scene of the accident. After being duly qualified as an expert, he was permitted to express an opinion as to where the place of impact had been in the collision between the two automobiles. We stated that the patrolman's

opinion was not objectionable as 'usurping the province of the jury' merely because it embraced an ultimate issue of fact. This is the modern and logical view. *See* 31 Am.Jur.2d *Expert and Opinion Evidence* § 22 (1967). The writer states:

'Logically, there would appear to be no wrongful invasion of the province of the jury in permitting an expert to express his opinion upon an ultimate fact in a case where expert opinion is necessary to assist the jury in reaching the right determination. In such case, as in the case of an eyewitness to a decisive fact, if the jury are satisfied of the trustworthiness of the evidence, the evidence may be conclusive of the issue, but they are not bound to accept the opinion or to render the verdict according to it.'

*Spry,* 88 S.D. at 322–23, 207 N.W.2d at 506–07.

In the instant case, we believe that the admission of the social worker's "expert" opinion as to the source of the victim's sexual knowledge was, indeed, objectionable, but not "merely because it embraced an ultimate issue of fact." The primary criterion for the admissibility of expert opinion evidence under SDCL 19–15–2 is the helpfulness requirement; to-wit: that the proffered testimony "assist the trier of fact to understand the evidence or to determine a fact in issue[.]" SDCL 19–

12–3, however, states: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Thus, even helpful, relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice or of misleading the jury.

We note that the sexual abuse of children places lay jurors at a disadvantage, inasmuch as the common experience of a juror may represent a less than adequate foundation for assessing the credibility of a young child who complains of sexual abuse. *See, e.g., State v. Myers,* 359 N.W.2d 604 (Minn.1984). We share the concerns of the Court in *United States v. Amaral,* 488 F.2d 1148 (9th Cir.1973), however, that within the context of a criminal trial, "[s]cientific or expert testimony particularly courts the [danger of undue prejudice or of confusing the issues or misleading the jury] because of its aura of special reliability and trustworthiness." 488 F.2d at 1152. *See also United States v. Green,* 548 F.2d 1261 (6th Cir.1977). Permitting the social worker in this case to testify as an "expert" that it was her opinion that the alleged victim gained his sexual knowledge from having sex with appellant, lent a stamp of undue legitimacy to her testimony. Admittedly, the trial court has broad discretion in qualifying an expert but, here, we are not dealing with scientific data which will aid the jury in an area wholly beyond their understanding. Clearly, the social sciences do not claim empiricism, or the scientific exactitude that physics and medicine aspire to. We believe that the possibility of prejudice substantially outweighed the probative value of this testimony, and that the trial court clearly abused its discretion in admitting it.

The State urges that the admission of the social worker's opinion as to where the four-year-old boy gained his sexual knowledge was "harmless error." We

disagree. Contrary to the State's contention, the evidence as to the fact in issue; namely, whether the rape occurred, was by no means cumulative. As to this, we have the testimony of the alleged victim's mother who, admittedly, suspected appellant of stealing jewelry from her. Further, expert testimony was given by a physician who examined the alleged victim and concluded that there was no medical evidence of physical trauma four days after the rape was said to have taken place. Moreover, the child was only four years of age and while the trial court held that he was competent to testify,[2] the child's age and immaturity reflect upon his credibility.[3] We also note that the State's expert testified that one-third of the sexual abuse cases she had investigated were unsubstantiated.[4]

There was no medical or physical evidence of abuse. There was no outcry when the alleged acts occurred. The child's first complaint named his two-year-old brother, which is incredible. Peculiarly, the alleged acts were committed in the proximity of appellant's girl friend, and Count III, Sexual Contact With a Child Under Fifteen, consisted of appellant having the victim insert his penis "in there," [5] a physical impossibility.

Crimes of this nature are abhorrent to our society. The very charge carries a stigma and society will not tolerate such activity. Yet, these cases are difficult to prosecute, for they are committed in private upon innocent and often very young children; factors which make evidence difficult to preserve and present, while still adhering to the strictures of due process and the rights of the accused. We can understand the reluctance of a jury to acquit in this type of case. We believe, however, that with these charges and weak evidence the triers of fact were unduly inclined to rely upon the expert's opinion as to the ultimate issue. Therefore, we conclude that the expert's opinion was not "harmless error" but probably pivotal in the jury's decision. Not every accused is guilty, but every accused, innocent or guilty, is entitled to a fair trial.

Appellant argues that the statements the alleged victim made to his mother concerning the assault were hearsay, not subject to the excited utterances exception under SDCL 19–16–6, because "the statements made to the mother were made at least two and probably three days after the incident...." We disagree.

SDCL 19–16–6 provides that "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition, is not excluded by § 19–16–4, even though the declarant is available as a witness."

In our recent decision in *State v. Bult,* 351 N.W.2d 731, 736 (S.D.1984), we addressed the contemporaneousness issue stating:

'... Lack of capacity for fabrication rather than lack of time to fabricate is the justification for this rule, and there is no pat answer as to the length of time that elapsed between the event and the utterance. " '[T]he character of the transaction or event will largely determine the significance of the time factor.' " The crucial point is that the court must be

---

**2.** Any determination as to the competency of the witness is within the discretion of the trial court and may be reversed only upon a showing of abuse of discretion. *State v. Phipps,* 318 N.W.2d 128 (S.D.1982); *Moser v. Moser,* 82 S.D. 149, 143 N.W.2d 369 (1966). We find no abuse of discretion.

**3.** We recognize credibility is a jury question, however, we are deciding whether inadmissible opinion evidence of an expert constitutes "harmless error."

**4.** We recognize there is authority a child of this age does not have sufficient sexual knowledge to fabricate sexual abuse falsehoods, and therefore are generally truthful as to their complaints. *State v. McCafferty,* 356 N.W.2d 159 (S.D.1984). Nor, are they generally motivated to make false charges. Nevertheless, they may be mistaken as to identity, subject to improper suggestions, coercion, etc.

**5.** Using anatomical dolls to demonstrate the appellant's posterior; although penetration is not necessary to commit the offense. *See* SDCL 22–22–7.1.

able to find that the declarant's state at the time he made the declaration ruled out the possibility of conscious reflection.' [citing Weinstein's *Evidence* § 803(2)[01] at 803–84].

Further, we cited this court's opinion in *State v. Percy*, 80 S.D. 1, 7, 117 N.W.2d 99, 102 (1962), stating that "[w]hile the time that elapsed between the event and the statement is a factor to be considered, it is not determinative. Whether an utterance was made under the influence of the event must be determined on the basis of the circumstances in each case."

In *State v. McCafferty*, 356 N.W.2d 159, 161 (S.D.1984), we noted that SDCL 19–16–6 is modeled after Federal Rule of Evidence 803(2), and that "[u]nder the federal rules, many courts have relaxed the rigid time and spontaneity requirements when the declarant is a child of tender years. 7 J.JUV.L. 205 (1983)."

■ Thus, particularly where the declarant is a child of tender years, a mere lapse of time does not, by itself, disqualify a statement as an excited utterance. The critical inquiry is whether the statements were made while the declarant was still under the influence of the experience. *State v. Percy, supra.* As to this, the Supreme Court of Colorado stated in *People in Interest of O.E.P.*, 654 P.2d 312, 318 (Colo.1982) (citations omitted):

Although the temporal interval between the 'startling event' and the child's statement is not without significance, it is not conclusive on the question of admissibility....

Nor does the fact that some general questioning preceded the hearsay declarations destroy their character as excited utterances. An inquiry, especially one addressed to a child of tender years, is not sufficient in itself to undo the underlying basis in reliability for the excited utterance exception.

■ The State concedes that there was a lapse of time between the alleged incident and the child's statements to his mother. There is some confusion and the record is not clear as to when the statements were first made. At one point in her testimony, the young boy's mother indicated that he complained the day after the incident "that he couldn't go to the bathroom and that his bottom hurt." She later testified, during cross-examination, that the exchange between the child and his younger brother, i.e., "are you going to stick that in my butt," took place two days after the incident. In this instance, the short lapse of time, by itself, does not merit the disqualification of the victim's statements to the mother as excited utterances. For, as we stated in *State v. McFall*, 75 S.D. 630, 635, 71 N.W.2d 299, 301–02 (1955): "Where the victim is of an age as to render improbable that [the] utterance was deliberate and its effect premeditated the utterance need not be so nearly contemporaneous with the act as in the case of an older person."

Here, we are presented with the statements of a four-year-old boy, who allegedly complained of sexual assault by an unrelated male adult. The statements were made to the child's mother within the normal course of his daily activities. These circumstances, coupled with the inability we perceive of the child to fabricate an account of such a heinous sexual encounter, warrant a finding that the statements were excited utterances.

■ Appellant further claims the statements made to the social services worker are inadmissible. Although we have concluded that the statements made to the mother by the child are admissible under the excited utterance rule, SDCL 19–16–6, we decline to hold that the statements made to the social worker are admissible under that rule.[6] The statements made to the social worker were later in time—fifteen days after the incident—and after the case had been referred to her for investiga-

---

6. While it *may* not be applicable in this case because of its effective date, our legislature has enacted a statutory "tender-years" rule.

tion. Further, there was no showing that the child was still under the influence of the experience. *See McCafferty, supra.* On a retrial, however, those statements may be admissible under the provisions of SDCL 19–16–2[7] or SDCL 19–16–28.[8] Of course, that depends upon the facts developed during retrial. In *McCafferty,* we held statements and demonstrations with dolls similar to this case to be admissible under SDCL 19–16–28. In the case at bar, there is a serious question as to whether proper notice was given. Perhaps the State may remedy that situation before retrial. Also, there will be the question of unavailability of the child as a witness. *See McCafferty, supra.*

Regarding SDCL 19–16–2, it is possible that the statements to the social worker will be offered to rebut an express or implied charge against the child of recent fabrication, provided that the facts developed comply with the rule.

We have considered the other claims of error but our decision renders them moot at this time.

WOLLMAN, MORGAN and HENDERSON, JJ., concur.

FOSHEIM, C.J., dissents.

FOSHEIM, Chief Justice (dissenting).

Being unable to conclude that the trial court clearly erred in admitting the social worker's statement that she believed the four-year-old victim gained his sexual knowledge from sexual contact with defendant, I dissent.

Expert testimony is admitted at the discretion of the trial judge and his ruling will not be reversed absent a clear showing of abuse of that discretion. *State v. Bittner,* 359 N.W.2d 121, 125–26 (S.D.1984) *(citing State v. Lachowitzer,* 314 N.W.2d 307 (S.D. 1982) and *State v. [Iron] Shell,* 301 N.W.2d 669 (S.D.1981). *See also Buckley v. Fredericks,* 291 N.W.2d 770, 771 (S.D.1980); *Kramer v. Sioux Transit, Inc.,* 85 S.D. 232, 180 N.W.2d 468 (1970); *State ex rel. Helgerson v. Riiff,* 73 S.D. 467, 44 N.W.2d 126 (1950). Further, it is within the judge's discretion to determine "how far counsel must limit his questions so the [expert] opinion will be of assistance to the jury." *Kramer,* 85 S.D. at 239, 180 N.W.2d at 472. While the foundation presented to the jury was less than ideal, the record does not indicate a want of information from which the jury could weigh and accept or reject the social worker's conclusion.

The jury was ultimately left with sufficient information on which to assess the expert's conclusion and accept or reject it. *See Cargill, Inc. v. Elliott Farms, Inc.,* 363 N.W.2d 212, 215 (S.D.1985). In sexual abuse cases involving children, expert testimony on the child's degree of sexual knowledge (in contrast to other children of

7. SDCL 19–16–2 provides:
 A statement is not hearsay if the declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is
 (1) inconsistent with his testimony and was given under oath and subject to the penalty of perjury at a trial, hearing or other proceeding, or in a deposition, or
 (2) consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive, or
 (3) one of identification of a person made after perceiving him.

8. SDCL 19–16–28 provides:
 A statement not specifically covered by any of §§ 19–16–5 to 19–16–27, inclusive, but having equivalent circumstantial guarantees of trustworthiness, is not excluded by § 19–16–4,

even though the declarant is available as a witness, if the court determines that
 (1) the statement is offered as evidence of a material fact;
 (2) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and
 (3) the general purposes of chapters 19–9 to 19–18, inclusive, and the interests of justice will best be served by admission of the statement into evidence.

However, a statement may not be admitted under this section unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, his intention to offer the statement and the particulars of it, including the name and address of the declarant.

the same age) may be helpful to a jury, especially where the child is extremely young. *See State v. Myers,* 359 N.W.2d 604, 609–11 (Minn.1984). Advanced sexual knowledge is a trait commonly exhibited by sexually abused children and has been recognized in South Dakota.[1] *Id.* More important, discussion of this characteristic is an appropriate topic for an expert witness since jurors cannot be expected to rely on common knowledge and experience concerning the mental and physical condition of a four-year-old sexual abuse victim. *See State v. Kim,* 64 Hawaii 598, 645 P.2d 1330, 1337–38 (1982). We must take care not to diminish or foreclose evidence of this nature. The majority opinion labels this evidence as only corroborating the credibility of the child as a witness. Under appropriate circumstances, it should be admitted as independent relevant, material evidence of sexual abuse.[2]

Clearly, there was no abuse of judicial discretion in qualifying the social worker as an expert opinion. *In re J.L.H.,* 316 N.W.2d 650, 651 (S.D.1982). Further, the sexual knowledge of the four-year-old victim was a proper subject for expert testimony because the social worker could provide the jurors "with peculiar knowledge or experience, not common to the world." *Wentzel v. Huebner,* 78 S.D. 481, 493–94, 104 N.W.2d 695, 702 (1960) (quoting *Taylor v. Town of Monroe,* 43 Conn. 36, 44). *See also Buckley v. Fredericks,* 291 N.W.2d 770 (S.D.1980); *Walthoff v. Hall,* 73 S.D. 483, 44 N.W.2d 221 (1950). The social worker's opinion was not necessarily conclusive. *DuPratt v. Black Hills Land and Abstract Co.,* 81 S.D. 637, 642, 140 N.W.2d 386, 389 (1966). The jury was not bound by the expert's opinion. *Robinson v. New*

*York Life Insurance Co.,* 69 S.D. 30, 35, 6 N.W.2d 162, 164 (1942). Finally, any factual deficiencies relate to the weight of the testimony and not its admissibility. *Buckley, supra* at 772.

---

1. "A young child is unlikely to fabricate a graphic account of sexual activity because such activity is beyond the realm of his or her experience." *State v. McCafferty,* 356 N.W.2d 159, 164 (S.D. 1984).

2. Other states have faced similar issues in recent child abuse cases. No clear trend has emerged. *See State v. Myers,* 359 N.W.2d 604 (Minn.1984) (expert testimony on the characteristics typically found in sexually abused children said to be only collateral evidence on the victim's credibili-

ty); *State v. Petrich,* 101 Wash.2d 566, 683 P.2d 173 (1984) (credibility of a very young alleged sexual abuse victim-witness may be an inevitable central issue); *see also State v. Middleton,* 294 Or. 427, 657 P.2d 1215 (1983) (much expert testimony tends to reflect on a certain witness's credibility and that, itself, will not render the evidence inadmissible). *Compare, People v. Roscoe,* 168 Cal.App.3d 1093, 215 Cal.Rptr. 45 (5th D.Cal.Ct.App.1985) (expert's diagnosis of boy as molestation victim held inadmissible).