ZINDA, Respondent, v. PAVLOSKI and another, Appellants.
PAVLOSKI, Appellant, v. HARDWARE MUTUAL CASUAL-
TY INSURANCE COMPANY and another, Respondents.

*January 7—February 1, 1966.*

642

For the appellants there was a brief by *Genrich, Terwilliger, Wakeen, Piehler & Conway* of Wausau, for Stanley B. Pavloski and the Casualty Reciprocal Exchange, and *John J. Haka* of Stevens Point, for Stanley B. Pavloski, attorneys, and *Roger Rouse* of Wausau of counsel, and oral argument by *Mr. Rouse.*

For the respondents there was a brief by *Herman J. Glinski* of Stevens Point, for Robert J. Zinda, and *Peick-*

*ert, Anderson, Fisher, Shannon & O'Brien* of Stevens
Point, for the Hardware Mutual Casualty Insurance Company and Robert J. Zinda, and oral argument by *Mr. Glinski* and *Mr. John E. Shannon, Jr.*

GORDON, J. There are three major contentions advanced by the appellants. The first is their claim that certain photographs were improperly admitted into evidence. The second contention is that the verdict is contrary to the evidence insofar as it found Mr. Zinda entirely free of negligence. Thirdly, it is urged that the award of $15,000 in damages to Mr. Zinda is excessive.

### *The Admission of the Photographs.*

Exhibit 4 and also Exhibits 11 through 16 are photographs of the locale where the accident took place. They were *admitted into evidence over objection.* The appellants claim that the photographs are misleading insofar as they show skid marks which were not specifically identified as coming from the Zinda vehicle.

While it is true that there was no specific testimony which in so many words established that the skid marks were caused by Mr. Zinda's vehicle, this should not preclude the jury's consideration of such photographs as relevant evidence going to that very question. In other words, in the absence of definitive proof that the skid marks did not come from the Zinda car, it was appropriate that the jury have before it photographs taken at a time closely related to the accident from which the jury might infer that the skid marks did actually result from Mr. Zinda's braking.

The record does not categorically establish the fact that these skid marks could not have come from the Zinda automobile. Mr. Zinda testified that he was going approximately 40 to 45 miles per hour when the Pavloski vehicle veered in front of him, whereupon he applied

his brakes. Mr. Zinda was unable to state whether his car skidded prior to the collision, but the jury could have considered his speed and the fact that he applied his brakes and inferred that skidding might have resulted. In any event, it is safe to say that the *absence* of skid marks was not uncontrovertibly established.

Several witnesses testified that the photographs contained a true and correct representation of the scene. One witness, Officer Worzalla, testified that he observed the skid marks appearing on Exhibits 11 and 13 and that he had discovered them while he was investigating the accident on the same day that the collision occurred. Thus, the photographs, which were taken the day after the accident, were not remote in time and according to the evidence accurately reflected the scene as it existed on the very day of the accident. The pictures are certainly not conclusive of the fact that the skid marks appearing thereon were caused by the Zinda vehicle, but this fact does not deprive them of their probative value and relevance to such question.

Identification of skid marks can be established with certainty if a witness happened to observe the marks being created by the skidding car or if a witness were to see the marks extending right up to the tires of the car before it was moved. However, it does not follow that evidence as to skid marks may not be admitted for consideration by the trier of fact if less foundation is offered. But cf. *Williams v. Graff* (1950), 194 Md. 516, 524, 71 Atl. (2d) 450.

If the evidence is not remote in time and is located so as to be reasonably attributable to the car in question, the trial court in its discretion may permit the evidence to be received. In addition to the questions of remoteness and location of the marks, the court could properly weigh such other factors as the amount of other traffic at the scene and the probability of change in the condition of the roadway after the accident. 8 Am. Jur. (2d), p. 504, sec. 958; 23 A. L. R. (2d) 112.

We conclude that it was well within the discretion of the trial court to determine that these photographs were sufficiently fair and accurate to warrant being admitted into evidence. *Neuenfeldt v. State*, ante, p. 20, at page 32, 138 N. W. (2d) 252; *Vollert v. Wisconsin Rapids* (1965), 27 Wis. (2d) 171, 176, 133 N. W. (2d) 786; *Commerce Ins. Co. v. Badger Paint & Hardware Stores* (1953), 265 Wis. 174, 182, 60 N. W. (2d) 742.

It is also contended that the photographs were not properly verified pursuant to sec. 270.202, Stats., which requires that a photograph which is received in evidence shall contain a statement of the position of the camera and certain other technical information. It is conceded that the necessary information called for by sec. 270.202 was in fact contained on the back of the photographs. However, the appellants urge that the accuracy of such information was not verified by a competent witness.

The objection to the admission of the photographs did not specify this ground, and, accordingly, there was no occasion for the trial judge to question the accuracy of the technical information needed under sec. 270.202, Stats. The trial court's finding that the photographs were properly authenticated and fairly represented what they attempted to depict are conclusions which are entitled to great weight and will not be reversed in the absence of an abuse of discretion. *Commerce Ins. Co. v. Badger Paint & Hardware Stores* (1953), 265 Wis. 174, 182, 60 N. W. (2d) 742; *Wagner v. Peiffer* (1951), 259 Wis. 566, 571, 572, 49 N. W. (2d) 739; *Hupfer v. National Distilling Co.* (1903), 119 Wis. 417, 427, 96 N. W. 809.

### The Finding of No Negligence.

The appellants urge that the jury's finding which absolved Mr. Zinda of all negligence is contrary to the evidence. The jury reached its conclusion even though there was evidence that Mr. Zinda had been awake for approximately nineteen hours and had consumed six to

10 beers within the five-hour period preceding the accident.

The two drivers' versions of this accident were difficult to harmonize. Faced with two divergent stories, the jury chose to accept Mr. Zinda's explanation of how the accident happened, and, in our opinion, there is credible evidence to sustain such view which was also approved by the trial court. *St. Paul Fire & Marine Ins. Co. v. Burchard* (1964), 25 Wis. (2d) 288, 293, 130 N. W. (2d) 866; *Heritage Mut. Ins. Co. v. Sheboygan County* (1962), 18 Wis. (2d) 166, 170, 118 N. W. (2d) 118.

There is nothing about Mr. Zinda's conduct before the accident or about his manner of driving which would warrant our determining that as a matter of law he must have been chargeable with some negligence. There were disputed questions of fact before the jury, and we must consider the evidence in a light most favorable to sustain the verdict. *Ziegler v. Wonn* (1963), 18 Wis. (2d) 382, 384, 118 N. W. (2d) 706; *Walker v. Baker* (1961), 13 Wis. (2d) 637, 643, 109 N. W. (2d) 499. This jury may properly have been impressed with the fact that even though Mr. Pavloski was making a left turn, he did not see the Zinda car prior to the collision.

*The Claim of Excessive Damages.*

The jury awarded $15,000 to Mr. Zinda for personal injuries, and the appellants contend that such sum is excessive. In his ruling on motions after verdict, the trial judge stated: "I think the evidence well substantiates the finding of the jury with respect to damages."

As a result of the accident, Mr. Zinda spent five days in the hospital. He returned to college three weeks after the accident but testified that he experienced severe headaches for eight weeks from the date of the accident. His headaches continued at the rate of about three a week until the time of the trial. He played basketball two and one-half months after the accident.

He sustained a nine-centimeter scar upon his forehead. This same injury caused a severing of his left eyebrow and resulted in a drooping eyelid. Despite plastic surgery on the scar, Mr. Zinda claimed that the scar was sufficiently visible so as to be an impediment to him in his occupation as a salesman. Dr. Frank Iber, his treating physician, stated that the scar will be permanently visible although it will fade a bit as time goes by. Mr. Zinda consulted Dr. Frank Bernard, a plastic surgeon, who performed an excision on the scar. In Dr. Bernard's opinion, Mr. Zinda's scar will be permanent and no further surgical procedures will improve it.

He also had injuries to his limbs and fractured ribs. He complained that his knee buckled when he climbed stairs, and Dr. Iber testified that knee surgery will be necessary if the buckling continues. Mr. Zinda claimed that he had back pain which occurred upon prolonged sitting. Dr. Iber declared that there was tenderness and muscle spasm in the upper lumbar region. Shortly after his return home from the hospital, Mr. Zinda incurred a respiratory infection which resulted in a high fever. Dr. Iber opined that this may have been a cause of his patient's headaches.

We share the conclusion reached by the trial judge that the damages awarded to Mr. Zinda, who was twenty-one years of age at the time of the accident, were not excessive. *Kink v. Combs* (1965), 28 Wis. (2d) 65, 79, 135 N. W. (2d) 789; *Kablitz v. Hoeft* (1964), 25 Wis. (2d) 518, 525, 131 N. W. (2d) 346.

*By the Court.*—Judgments affirmed.