JUNIATA FEEDYARDS, A JOINT VENTURE OF
MORRISON-QUIRK GRAIN CORPORATION, A NEBRASKA
CORPORATION, ROBERT G. GOTTSCH, AND GOTTSCH
FEEDING CORPORATION, APPELLEE, V. VIC NUSS,
APPELLANT.

342 N.W.2d 1

Filed December 23, 1983. No. 82-627.

Jim Zimmerman of Atkins, Ferguson, Zimmerman, Carney & Law, for appellant.

Robert G. Pahlke of Van Steenberg, Brower, Chaloupka, Mullin & Holyoke, for appellee.

WHITE and CAPORALE, JJ., and BRODKEY, J., Retired, and BLUE, D.J., and COLWELL, D.J., Retired.

COLWELL, D.J., Retired.

This is a suit on an agister contract for damages for failure to redeliver cattle to plaintiff, Juniata Feedyards, a joint venture of Morrison-Quirk Grain Corporation, a Nebraska corporation, Robert G. Gottsch, and Gottsch Feeding Corporation. The jury returned a $16,385.85 verdict against defendant, Vic Nuss. Plaintiff's motion for new trial was granted and the verdict was set aside. The trial judge assigned as reasons that the verdict was contrary to the evidence and that there was patent error

in the instructions. From those assigned findings defendant appeals. We affirm.

After preliminary discussions in the fall of 1977 concerning defendant feeding cattle and providing adequate facilities, feed, and supervision, contracts were signed by the parties on December 23, 1977.

The first contract, effective December 15, 1977, provided that Nuss would care for, feed, and maintain 1,600 steers, of which 1,000 would be located at the Chauncey Ranch and 600 would be located at the Dukat Ranch. The second contract, effective January 1, 1978, provided for the care and maintenance of 800 heifers at the Renteria Brothers Ranch. Both contracts contained the same language.

Under the contract Juniata Feedyards was to pay Vic Nuss $20 per head of cattle upon delivery to Nuss, $20 per head at the end of the contract in June 1978, and 26 cents per pound on the gain of the cattle while in Nuss's care.

Nuss was to care for and maintain the cattle in accordance with generally accepted standards of animal husbandry, and under § 6 of the contract he was to be present or cause a responsible person to be present each day at the locations where the cattle were located.

In anticipation of some death loss during the course of the contract, the parties inserted the following § 7, which provides in part: "a. In case of death from lightning or sickness, or other natural causes which are not attributable to Nuss's negligence, Nuss shall provide Juniata Feedyards with the brand on the carcass. . . . If such losses do not exceed three percent (3%) of the total number of animals cared for by Nuss in accordance with this agreement, neither Nuss nor Juniata Feedyards shall be obligated to pay the other for either the loss of the animal or the loss of feed ingested by the animal or the loss of services in caring and maintaining for said cattle. Nuss shall be responsible for all losses caused by his neglect and for all death

losses, regardless of cause, in excess of three per-
cent (3%) of the total animals cared for, said total
losses to be determined at the termination of this
agreement, except death losses caused by an Act of
God, such as blizzard, lightning, or epidemic.

"b.   Any other steers not accounted for at rede-
livery time shall be chargeable to Nuss [sic] ac-
count at the average weight per steer at the time of
such redelivery.   Price per pound is to be estab-
lished by the average cost per head to Juniata at
date of purchase."   (The underlined portion was
written in and initialed by Ken Morrison and Vic
Nuss.)

In addition to the provisions discussed above,
Juniata Feedyards was to pay the expense of all
veterinary medicines determined by Nuss to be
given the cattle in connection with their proper care.

Shortly after plaintiff began delivering calves,
Nuss informed it that the Dukat Ranch would not be
accepting cattle and that the extra cattle should be
shipped to the Chauncey Ranch.   Sometime after
that, Nuss indicated that a Mr. Woods had agreed to
take some of the cattle and that Chauncey could take
more cattle.

Plaintiff contends the contracts were orally
amended to provide for the additional cattle; de-
fendant denies such agreement.

The parties stipulated that, in all, (1) 2,125 head of
steers were delivered to the Chauncey Ranch; (2)
487 steers and 11 heifers were delivered to the Woods
Ranch; and (3) 799 head of heifers were delivered to
the Renteria Brothers Ranch.

During the course of the feeding agreement, the
plaintiff made payments to Nuss in excess of
$107,000.

There were several indications through the winter
that there was a problem with the condition of the
cattle, particularly those at the Chauncey Ranch.
There was evidence that they were sick, unattended,
thin, and poorly fed.   One bunch of more than 300

head was discovered dead in a pile in such a condition they could not be identified or counted. After Nuss had given several assurances as to the good condition of the cattle, he finally admitted the same were not true. At the end of the feeding contract Nuss was short either 521 or 542 head of the 2,125 that were at the Chauncey Ranch, 75 head of those delivered to the Woods Ranch, and 5 head of those sent to the Renteria Brothers Ranch. Nuss argued that the losses were due to an epidemic of shipping fever complex and extreme cold weather and that therefore he was not responsible due to the "Act of God" clause in the contract. Plaintiff produced substantial evidence in support of its theory that the cattle were not fed or cared for properly, as the cause of their death. There was also a dispute as to who was responsible for branding and vaccinating the cattle.

Since the losses on the Renteria Brothers Ranch were minimal, the only real dispute regarding those cattle involved the amount due Nuss for the care and feeding. The significant dispute involves the cattle kept at the Chauncey Ranch and the Woods Ranch.

At the instruction conference neither party objected to the instructions here discussed. "Failure of counsel to object to proposed jury instructions after submission of them to him by the court for review precludes objection on appeal. . . . Noncompliance by counsel with the requirement however, does not bar this court from opting to consider plain errors in a record indicative of a probable miscarriage of justice." *Barta v. Betzer*, 190 Neb. 752, 754, 212 N.W.2d 352, 354 (1973). "[I]t is the duty of the trial court, whether requested to do so or not, to submit to and properly instruct the jury on all material issues presented by the pleadings and supported by the evidence." *Enyeart v. Swartz*, 213 Neb. 732, 735, 331 N.W.2d 513, 515-16 (1983).

Instruction No. 6 has three parts that we identify

by letter for discussion: (A) *Plaintiff's burden of proof*. No error is assigned.

(B) *Defendant's defenses*. "To establish his defenses, Nuss must prove one or more of the following propositions by a preponderance of the evidence:

"1. The animals supplied by Juniata were not reasonably suited for the purpose of the contract . . . .

"2. The parties agreed that Juniata was to immunize or vaccinate the animals before delivery and Juniata failed to do so.

"3. The parties agreed that Juniata was to brand the animals before delivery and Juniata failed to do so.

"4. The loss of animals was due to an 'Act of God' . . . ."

(C) *Method to compute amounts due either party, if any*. "If Nuss has proved any one or more of the foregoing propositions by a preponderance of the evidence, you shall deduct from the sum you found due Juniata, the animal death loss you find proximately resulted from Juniata's breach of that particular proposition. You shall then deduct the amount you find due Nuss on the Renteria contract, Exhibit B, and return a verdict for Juniata for the difference. If from these determinations the result is a balance in favor of Nuss, you shall return a verdict in that amount for Nuss and against Juniata.

"If Nuss has failed to prove any one or more of the foregoing propositions by a preponderance of the evidence, you will return a verdict for Juniata against Nuss for the amount you found due Juniata less the amount you find due Nuss on the Renteria contract, Exhibit B. If the result is a balance in favor of Nuss, you shall return a verdict in that amount for Nuss and against Juniata."

There was no separate damage instruction. We agree with the trial judge that a simplification of instruction No. 6 and a separate damage instruction would have been beneficial.

"The instructions of the court must be considered in toto and if so considered they cover the issues raised by the pleadings and supported by the evidence, they are adequate." *Kresha Constr. Co., Inc. v. Kresha*, 184 Neb. 188, 192-93, 166 N.W.2d 589, 592 (1969). Other applicable given instructions were No. 9, requiring a meeting of the minds for the formation of an agreement which may be determined from either words and acts at the time or from the later manner of performance, and No. 10, stating the implied promises and duties of the parties, including plaintiff's duty to provide cattle that were reasonably suited for the contract.

From a review of the instructions, we note these errors in instruction No. 6: (1) Item 3 in part (B), "The parties agreed that Juniata was to brand the animals before delivery and Juniata failed to do so." This was one of defendant's alleged defenses that such was the proximate cause of death losses; however, it was not supported in the evidence. "A litigant is entitled to have the jury instructed only upon those theories of the case which are presented by the pleadings and which are supported by competent evidence." *Vistron Corp. v. Scoular-Bishop Grain Co.*, 194 Neb. 696, 700, 234 N.W.2d 906, 909 (1975). That part of the instruction should not have been given.

(2) This is the error referred to by the trial judge as a patent error, and it relates to the first sentence in part (C), "If Nuss has proved any one or more of the foregoing propositions by a preponderance of the evidence, you shall deduct from the *sum you found due* Juniata, the animal death loss you find proximately resulted from Juniata's breach of that particular proposition." (Emphasis supplied.)

"An instruction which misstates the issues or defenses and has a tendency to mislead the jury is erroneous. . . . Conflicting instructions are erroneous and prejudicial unless it appears that the jury was not mislead [sic]." *Zimmerman v. Continental Cas.*

*Co.*, 181 Neb. 654, 660, 150 N.W.2d 268, 272 (1967); *Hickman-Williams Agency v. Haney*, 152 Neb. 219, 40 N.W.2d 813 (1950).

Although the word "sum" is a common word, it is indefinite as used here. "The sense in which the term [sum] is most commonly used is 'money' . . . ." Black's Law Dictionary 1287 (5th ed. 1979). As above used, "sum" is capable of two different meanings. The jury could interpret it to mean "money you found due Juniata" or "number of cattle you found due Juniata." If the first interpretation is given, the instruction would mislead the jury by improperly directing the jury to subtract death losses from money. An explanation was necessary to guide the jury, and none was provided. The other given instructions do not correct this error.

"The standard of review of an order granting a new trial is whether the trial court abused its discretion. This court will not disturb an order granting a new trial unless it clearly appears that no tenable grounds existed therefor." *Hegarty v. Campbell Soup Co.*, 214 Neb. 716, 720, 335 N.W.2d 758, 762 (1983).

Considering these errors, we conclude that the trial judge properly exercised his discretion in setting the verdict aside and granting a new trial for plain prejudicial errors that prevented plaintiff from having a fair trial.

It is not necessary to discuss the other assigned error.

It appears that the issue of defendant's liability on the contracts as amended was properly submitted to the jury and that upon retrial the issues should be limited to an accounting of money advanced by each party and the amount due under the contracts as amended, including the implied duty of plaintiff to deliver cattle reasonably fit for the purposes of the contract. *Caster v. Moeller*, 176 Neb. 30, 125

N.W.2d 89 (1963), *supp. op.* 176 Neb. 446, 126 N.W.2d 485 (1964).

AFFIRMED WITH DIRECTIONS.