Susan **SCHELSKE** and Mark Schelske, Plaintiffs and Appellees,

v.

**SOUTH DAKOTA POULTRY COOPER-ATIVE, INC.**, Defendant and Appellant.

**No. 17055.**

Supreme Court of South Dakota.

Considered on Briefs Oct. 23, 1990.

Decided Jan. 23, 1991.

**188**

Jeffrey D. Larson of Larson and Nipe, Woonsocket, for plaintiffs and appellees.

Todd Meierhenry of Meierhenry & Meierhenry, Sioux Falls, for defendant and appellant.

WUEST, Justice.

The South Dakota Poultry Cooperative appeals a jury verdict awarding Susan and Mark Schelske damages for breach of contract. We affirm.

Susan Schelske and Mark Schelske (Schelskes) are members of the South Dakota Poultry Cooperative (Cooperative). The Cooperative was formed for the purpose of constructing and operating a poultry processing facility. The promoters of the Cooperative solicited members in late 1982 and early 1983. The promoters also solicited people to raise geese for processing at the contemplated processing plant. The Schelskes purchased shares in the Cooperative and began to raise geese.

The Cooperative engaged an Illinois firm to market their processed poultry. However, the draft agreement entered into between the Cooperative and the Illinois firm was not acceptable to lenders who were financing construction of the processing plant. Construction of the plant was therefore delayed while the Cooperative and the marketing firm negotiated a marketing agreement.

The Cooperative realized delayed construction of the processing plant meant Cooperative members would need to find alternative processing for their geese. The Cooperative also knew the market for geese that year was saturated. In an effort to aid the geese producers, the Cooperative gave notice it would undertake a project to direct market the geese of any member wishing to participate. The Cooperative projected each participant would be paid sixty cents per pound of geese (live weight) marketed through the project. The Cooperative projected a fifty cents per pound earning for itself.

The Schelskes participated in the program. In November of 1983, the Schelskes' geese were loaded onto a Cooperative truck which came to their farms, and the geese were shipped to Illinois for processing and marketing. The Illinois firm which initially agreed to market the geese for the Cooperative refused to undertake such activity after contract negotiations between the firm and the Cooperative

failed. As a result of this abrupt halt in marketing and a surplus of geese, the Cooperative was not able to market all the geese produced by the participants in the project.

The Schelskes and other producers periodically received memoranda from the President of the Cooperative, updating the participants on the status of the project. The Cooperative issued checks dated December 14, 1983 to the Schelskes in payment of fifty percent of the amount due for their geese, i.e. thirty cents per pound of geese delivered. The memo portion of each check read, "½ goose payment." Memoranda sent to the producers indicated that additional payments would be forthcoming as the remaining geese were marketed and sold. The Cooperative returned to the Schelskes some of the packaged geese that were not sold and ultimately stored some of the unsold geese for marketing in the fall of 1984.

In February 1988, the Schelskes filed suit against the Cooperative for breach of an oral contract to buy geese at sixty cents a pound and sought damages in the amount of the unpaid fifty percent due on the geese delivered less the value of the packaged geese returned to the Schelskes. The Cooperative answered and denied the existence of any contract for the geese. The Cooperative characterized the project as a "venture in faith." A trial was held and the jury returned a verdict in favor of the Schelskes. The Cooperative appeals and raises three issues:

I. Whether the Schelskes' cause of action is barred by the statute of limitations set forth in SDCL 57A–2–725;

II. Whether the jury should have been instructed concerning the statute of limitations if the date the cause of action accrued was a question of fact; and,

III. Whether the evidence was sufficient to support the finding of a contract.

We address these contentions seriatim.

## I.

▇▇▇ SDCL 57A–2–725 provides in pertinent part:

(1) An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued.

(2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach[.]

Thus, we concern ourselves with determining when the breach occurred.

SDCL 57A–2–507(1) provides:

Tender of delivery is a condition to the buyer's duty to accept the goods and, unless otherwise agreed, to his duty to pay for them. Tender entitles the seller to acceptance of the goods and to payment according to the contract.

The Cooperative argues that because the Schelskes' tender of delivery of the geese in November 1983 created a duty on the part of the Cooperative to accept the geese and pay for them, the Schelskes' cause of action arose in November 1983. Alternatively, the Cooperative argues that the Schelskes' cause of action arose at the time of partial payment in December 1983. A careful reading of 57A–2–507(1) reveals that tender entitles the seller to payment *according to the contract.* Tender of delivery is a condition to the buyer's duty to pay for the goods, *unless otherwise agreed.* Clearly, then, it is the terms of the contract which determine when payment is due and therefore when a cause of action accrues for breach of contract by reason of nonpayment.

It was a question of fact for the jury to determine whether a contract was formed between the Cooperative and the Schelskes, and if so, the terms of such a contract. The jury was also to determine if the contract was breached, and if so, when the breach occurred. The trial court held prior to trial that when the breach occurred was a question of fact for the jury to determine.

▇▇▇ There is ample evidence in the record to support a jury's finding the parties expected final payment to be made after February 1984 and not upon tender of delivery. A memorandum sent by the Co-

operative to the geese producers stated payment for the geese could not be made in advance because financing had not been secured. Furthermore, if financing was not secured during the project, producers would not be paid until the geese were sold. The evidence revealed financing was never secured and the processing plant was never built. A memorandum which accompanied the 50% payment in December indicated the Board would continue to market the unsold geese or would store them for marketing in the fall of 1984. Another memorandum stated that only approximately one-third of the geese had been sold and the Board did not anticipate selling a significant amount of the geese until the 1984 holiday season. A producer, other than the Schelskes, testified final payment for the geese would be made in the months after issuance of the first partial payment. Accordingly, we cannot determine as a matter of law from these facts that the Schelskes' cause of action arose upon tender of delivery or at the time of partial payment. Therefore, we hold the Schelskes' cause of action was not time barred by SDCL 57A–2–725.

## II.

The Cooperative contends the trial court erred by not instructing the jury on when a breach of contract occurs under SDCL 57A–2–725. The Cooperative requested the following instruction:

> An action for the breach of any contract for sale must be commenced within four years after the cause of action has accrued. A cause of action accrues when the breach occurs regardless of the aggrieved party's lack of knowledge of the breach.

■ A trial court is to present only those instructions which are supported by competent evidence in the record. *Kallis v. Beers*, 375 N.W.2d 642 (S.D.1985); *Olesen v. Snyder*, 277 N.W.2d 729 (S.D.1979). Generally, a trial court's refusal to give a requested instruction setting forth the applicable law constitutes prejudicial error. *Ryken v. Blumer*, 307 N.W.2d 865 (S.D. 1981); *Wolf v. Graber*, 303 N.W.2d 364 (S.D.1981). The burden is upon the appellant, however, to demonstrate prejudicial error to the effect that the jury might and probably would have returned a different verdict if the proposed instruction had been given. *Ryken*, 307 N.W.2d at 869; *Lytle v. Morgan*, 270 N.W.2d 359 (S.D.1978). On appeal, this court must consider the jury instructions as a whole to determine if prejudicial error exists. *Lytle*, 270 N.W.2d at 362; *Schmidt v. Wildcat Cave, Inc.*, 261 N.W.2d 114 (S.D.1977).

■ We do not believe the jury's verdict would have been different had the Cooperative's proposed instruction been given. The evidence presented at trial framed the issue of the case to the jury as the existence or nonexistence of a contract. As we have previously discussed, there was ample evidence to support the finding of a contract and that payment under the terms of such contract was due well after receipt of the first partial payment in December 1983. Indeed, the *only evidence* with respect to payment showed final payment would be made after the geese were sold, whether or not a contract existed between the parties. Under such evidence, once having found a contract, the jury was bound to find its payment term required final payment well after the first partial payment. Thus, even if the statute of limitations instruction had been given, once the jury found a contract, the jury would have necessarily found its breach to have occurred within four years of the commencement of this action. Consequently, the jury could not have returned a different verdict if the instruction had been given. The trial court did not err by refusing to give the requested instruction.

## III.

■ The Cooperative contends the evidence at trial was insufficient to support a finding of a contract because the evidence failed to demonstrate the President of the Cooperative had authority to enter into the alleged contract. There is no merit to this argument. The Board of Directors was well aware of the goose project. A number of the Board members had geese in the project and all the geese producers

received memoranda updating them on the project. The memoranda clearly demonstrate the Board's knowledge of and involvement in the goose project. One memorandum introduced by the Cooperative at trial read in part:

> The goose project is a go. Twenty five thousand head have been committed. We will have them custom processed. We project a profit for the Coop and a premium price for the producers[.]

The Schelskes introduced a memorandum which concerned payment to the producers and the return of unsold undergrade geese. It stated in part:

> The Board directed us to pay producers 50% in order of delivery as payments came in.... The Board approved to distribute [unsold undergrade geese] to members in proportion to the number delivered.

Another memorandum introduced by the Cooperative and concerning the disposition of unsold geese read in part:

> Whether the Board will decide to dump [the unsold geese] at any price or store them remeins [sic] to be seen. Be assured the Board will do the best thing possible for most of the Board members have geese in the project too.

The President testified the Board discussed the goose project and the nonpayment of the remaining fifty percent due the producers "a million times," and the Board would have paid the outstanding balance if they had the money. Clearly, then, the President of the Cooperative engaged the producers in the goose project with the full knowledge and approval of the Board of Directors.

From the foregoing evidence, the jury could well have found the President of the Cooperative acted with the actual or implied authority of the Board. Indeed, the Cooperative should not be heard to disavow the action of its President where the Board, by subsequent action, either ratified his conduct or acquiesced therein. *See Contract Materials Co. v. Oahe Land and Cattle Co., Inc.*, 374 N.W.2d 102 (S.D. 1985); *First National Bank of Beresford v. Nelson*, 323 N.W.2d 879 (S.D.1982); *En-gler v. Ipswich Printing Co.*, 63 S.D. 1, 256 N.W. 132 (1934).

We affirm on all issues.

HENDERSON, J., and MORGAN, Retired Justice, concur.

MILLER, C.J., and SABERS, J., dissent.

MORGAN, Retired Justice, participating.

HERTZ, Circuit Court Judge, Acting as 'a Supreme Court Justice, not participating.

SABERS, Justice (dissenting).

The date the cause of action arose is a question of fact and it was reversible error for the trial court to refuse to properly instruct the jury thereon. *Ryken v. Blumer*, 307 N.W.2d 865, 869 (S.D.1981).

The majority opinion is correct in stating that "[a] trial court should present only those instructions which are supported by competent evidence in the record." *Kallis v. Beers*, 375 N.W.2d 642, 644 (S.D.1985). However, the majority errs in its application of that principle to this case. The record here clearly contains testimony from the Schelskes that they expected to be paid on the day of delivery or within the following month. Therefore, this record supports the proposed instruction.

The majority also errs when it states, "We do not believe the jury's verdict would have been different had the Cooperative's proposed instruction been given." This is not the test, and it is for the jury to decide factual questions, not the trial court or this court. "This Court cannot be the thirteenth juror." *Malloy v. Commonwealth Highland Theatres, Inc.*, 375 N.W.2d 631, 635 (S.D.1985). The question is not the "existence or nonexistence of a contract," it is *the date the cause of action arose* under the contract. Reasonable minds could differ and it was a jury question under proper instructions.

MILLER, C.J., joins this dissent.