Jon SOMMERVOLD, Plaintiff
and Appellant,

v.

Dave GREVLOS, Defendant
and Appellant.

Nos. 18145, 18146 and 18159.

Supreme Court of South Dakota.

Argued Oct. 6, 1993.

Decided June 8, 1994.

Gary J. Pashby, Gregg S. Greenfield of Boyce, Murphy, McDowell & Greenfield, Lawrence L. Piersol of Davenport, Evans, Hurwitz & Smith, Sioux Falls, for plaintiff and appellant.

Terence R. Quinn of Quinn, Eiesland, Day & Barker, Belle Fourche, James L. Hoy of Hoy & Hoy, Sioux Falls, for defendant and appellant.

GORS, Circuit Judge.

Jon Sommervold (Sommervold) and Dave Grevlos (Grevlos) each appeal from adverse judgments entered after a jury awarded each of them nothing on their claims against each other for negligence. We affirm.

## FACTS

On June 16, 1986, some time between 9:50 p.m. and 10:05 p.m.[1], Grevlos[2] was riding a bicycle west on Tomar Road in Sioux Falls. Sommervold[3] was riding a bicycle east on Tomar Road. Sommervold and Grevlos collided at the bottom of two steep[4] grades where Tomar Road curves slightly just west of Cliff Avenue. The cyclists' speeds were estimated from 28 to 40 miles per hour.

Grevlos had the light on his bicycle turned on while Sommervold did not have a bicycle light. The sun set at 9:10 p.m. and the amount of light was disputed[5]. Apparently, neither saw the other until the collision occurred. The location of the collision was also disputed. Sommervold claimed that the collision occurred in his lane and Grevlos claimed that the collision occurred near the center of the road. The location of the center of the

---

1. The exact time of the collision was hotly contested because the amount of light available had a significant role in both parties' presentation at trial.

2. Grevlos was 25 years old at the time of the collision.

3. Sommervold was 19 years old at the time of the collision.

4. Grevlos was descending a hill with a 10% grade and Sommervold was descending a hill with a 12% grade.

5. The street lights were on.

road was also in dispute because Tomar Road is not banked around the particular curve in question and cars have tended to drive closer to the south side of the curve with the result that the apparent center of the road is farther south than the geometric center of the road. The only eye-witness, Ian Moquist, a junior high school student, first told authorities that the collision occurred in the center of the road but testified at trial that the collision occurred in the south (Sommervold's) lane. It is undisputed that the riders collided right side to right side.[6] When help arrived, Sommervold was laying in the middle of the road and Grevlos was sitting near the south curb.

Sommervold sustained injuries which required medical attention that cost approximately $3,600.00. Grevlos' right shoulder was seriously injured and could not be repaired. Eventually, Grevlos' shoulder was fused to his arm resulting in the practical loss of use of his right arm.

Sommervold sued Grevlos and Grevlos counterclaimed. A jury trial was held September 1–4 and 8, 1992. The jury returned verdicts against each of the claimants awarding each of them nothing. The trial court entered a judgment based on the jury verdict and both claimants appeal.

The appeals embrace seven issues. Four relate to rulings on exhibits offered at the trial and three relate to jury instructions. We will deal with the evidentiary questions first.

## STANDARD OF REVIEW—EVIDENCE

■ The trial court's evidentiary rulings are presumed correct. *Opp v. Nieuwsma,* 458 N.W.2d 352, 357 (S.D.1990). The party claiming error must show a clear abuse of discretion, *Zepp v. Hofmann,* 444 N.W.2d 28, 31 (S.D.1989), and prejudicial error, *Shamburger v. Behrens,* 380 N.W.2d 659, 661 (S.D. 1986). The trial court properly exercised discretion if a judicial mind could reasonably have reached the conclusion the trial court

reached. *Dacy v. Gors,* 471 N.W.2d 576, 580 (S.D.1991).

## ISSUE ONE

## GREVLOS' EXHIBIT E—THE "DARK" PHOTOGRAPH

Grevlos offered Exhibit E to show how dark it was on the evening of the collision. The photo was taken at 8:54 p.m. on August 30, 1992, more than six years after the collision. Testimony was offered to show that the light at 8:54 p.m. on August 30th approximated the light at 10:00 p.m. on June 16th (the date of the collision in 1986).

■ Generally photographs are admissible if they accurately portray something which a witness is competent to describe in words or where they are helpful to aid the verbal description of objects and conditions and provided they are relevant to a material issue. *State v. Blue Thunder,* 466 N.W.2d 613, 621 (S.D.1991); *State v. Muetze,* 368 N.W.2d 575, 586 (S.D.1985); *State v. Holland,* 346 N.W.2d 302, 307 (S.D.1984). In *Johnson v. Chicago & Northwestern Ry. Co.,* 71 S.D. 132, 139–140, 22 N.W.2d 725, 729 (1946), photographs taken at or near the time of collision were held to be admissible. Even if relevant, the probative value of the photographs must outweigh their prejudicial effect. *State v. Woodfork,* 454 N.W.2d 332, 337 (S.D.1990).

■ Exhibit E was taken more than six years after the collision. Although it was offered to show how much light was available, the time and date were different. Particularly, the sun was 20% farther south on the horizon on August 30th in contrast to its location on June 16th. The trees in the area had six additional years of growth to obscure light. Cloud cover may have been different. The trial court noted that the photo was darker than the testimony indicated that the conditions were on the date and at the time of the collision. No foundation was laid to show that the aperture on the camera lens

---

6. Riders proceeding in opposite directions would logically pass to the right of each other and

collide left side to left side unless one of them

approximated what the eye would see.[7] Significantly, no eye-witness testified that Exhibit E approximated the light actually available on the date and at the time of the collision. In fact, Exhibit E was offered to impeach eye-witness Ian Moquist's description of the lighting conditions. The foundation for Exhibit E was not sufficient. A judicial mind could reasonably reach this conclusion. Therefore, the trial court exercised proper discretion in excluding Exhibit E.

## ISSUE TWO

### GREVLOS' EXHIBITS F1 AND F2—THE VIDEO TAPES

Grevlos offered Exhibits F1 and F2 to show how far a light on a bicycle could be seen on the roadway in the vicinity of the collision under similar light at the approximate time of the collision. These video tapes were taken starting at 8:52 p.m. and concluding at 9:16 p.m. on August 28, 1992, more than six years after the collision. Testimony was offered to show that the light at 8:52 p.m. on August 28th was equivalent to the light on June 16th (the date of the collision in 1986). F1 was taken from Sommervold's vantage and F2 from Grevlos' vantage. The trial court found that F1 was not consistent with Sommervold's testimony and was much darker than the testimony and that F2 did not adequately recreate what a particular individual's eyes could or could not see.

■ Demonstrative evidence must be relevant, probative and nearly identical[8]. *State v. Jenkins*, 260 N.W.2d 509, 511 (S.D. 1977); *State v. Bradley*, 431 N.W.2d 317, 325 (S.D.1988). In *Jenkins* the court noted that conditions can seldom be duplicated exactly.

However, when demonstrative evidence attempts to recreate an event rather than illustrate physical properties, it must be more nearly identical. *Randall v. Warnaco, Inc., Hirsch–Weis Div.*, 677 F.2d 1226, 1234 n. 7 (8th Cir.1982). The impact of video reenactment is substantial. When people see something on television, they think it is real even when it is not.

■ Exhibits F1 and F2 were taken more than six years after the collision. The time and date were different. F1 was much darker than the testimony indicated. Twenty-three minutes passed during the filming which would make the end of the tape equivalent to 10:23 p.m. on the date of the collision, much later than any testimony (from 9:50 p.m. to 10:05 p.m.). The trial court found that the videos were not similar enough to the testimony and therefore their prejudice outweighed their probative value. A judicial mind could reasonably reach this conclusion. Therefore, the trial court exercised proper discretion in excluding the video tapes.

## ISSUE THREE

### GREVLOS' COMPUTER ANIMATION

Grevlos offered a computer generated video animation to illustrate his accident reconstruction expert's testimony. The exhibit consisted of four components. Two video components were offered to show what Grevlos saw and what Grevlos would have seen if Sommervold would have had a light on his bicycle. One video component was offered to show that Sommervold should have seen Grevlos. The animation component was of-

---

was on the wrong side of the road. SDCL 32–26–1 and SDCL 32–26–3.

7. Photographs are usually taken through a lens. The amount of light to which the film is exposed depends on the amount of light which the lens admits into the camera. If the aperture is opened, more light reaches the film; if the aperture is constricted, less light reaches the film. Consequently, in the same lighting conditions, photographs can be made lighter or darker by manipulating the aperture. In addition, similar results can be achieved during the process of printing photographs by adjusting the light introduced through the enlarger lens. Finally, with color photographs, color balance can be manipulated to enhance lighter or darker colors, giving the photographs a lighter or darker appearance. When a photograph is used to establish how light or dark the conditions were at a given date and time, the foundation must include some evidence that the camera and printing faithfully reproduced the conditions that actually existed.

8. "[I]s the recreation of conditions so dissimilar to the original event that, even after effective highlighting of the dissimilarities, the demonstration would be misleading to the jury." *State v. Jenkins, infra*, 260 N.W.2d at 511.

fered to "illustrate" Grevlos' expert's testimony.

■ SDCL 19–17–1(9) requires the proponent of computer generated evidence to describe the system and show that the program produced an accurate result. Then the animation must be relevant, probative and nearly identical. *State v. Jenkins, supra,* 260 N.W.2d at 511. The animation must fairly and accurately reflect the oral testimony of the witness and be an aid to the jury in understanding the issues. *People v. McHugh,* 124 Misc.2d 559, 476 N.Y.S.2d 721, 723 (N.Y.1984).

■ The animation is not similar enough to be admissible. The animation assumes that both bicycles were travelling 25 miles per hour but the evidence varied from 28 to 40 miles per hour. The animation also depicted the light from a streetlight cast clearly in a circle rather than diffused in an ellipse as shown by the evidence. The animation showed the wrong location (off center and west of the actual location) and the injuries to the riders were inaccurately depicted as being left side to left side when they were actually right side to right side [9]. The trial court found that the exhibit added nothing to the testimony and would be more prejudicial than probative because "a video recreation of an accident ... becomes in the nature of testimony and it stands out in the jury's mind. So it emphasizes that evidence substantially over ... ordinary ... spoken testimony." A judicial mind could reasonably reach this conclusion. Therefore, the trial court exercised proper discretion in excluding the computer generated video animation.

### ISSUE FOUR

### SOMMERVOLD'S PICTURE OF A BLACK MARK IN THE ROAD

### (AND ACCOMPANYING TESTIMONY OF ARLO SOMMERVOLD)

■ Sommervold offered Exhibit 21 to show where the collision occurred. The photo was taken the day after the collision by an insurance adjustor who was with Arlo Sommervold, Jon's father. The photo shows a very faint black mark on the street together with a tape measure in the vicinity of the collision. The trial court granted Grevlos' motion in limine made at the beginning of the trial, denied admission of the photo and precluded Arlo Sommervold from testifying to the length, width, color or location of the mark on the road or that he picked pieces of a rubber-like substance from the mark. The trial court also denied Sommervold's offer of proof during the trial. The trial court held that the foundation was inadequate and that the probative value was outweighed by the prejudicial effect because no one could say how or when the mark was made or what made the mark.[10] Sommervold appeals this ruling by notice of review.

Photographs were admitted without proving the skid marks came from the plaintiff's automobile in *Zinda v. Pavloski,* 139 N.W.2d 563, 566–67 (Wis.1966). In *Zinda,* the trial court decided that the foundation was adequate. Here the trial court did not and observed: "There is no foundation that it came from either of the bicycles ..." and "there is no direct evidence foundation that the mark was left by a bicycle at all let alone a bicycle involved in the accident." In *Zinda,* the Wisconsin Supreme Court determined that the skid marks were probative. Here the trial court did not, stating: "But those facts don't prove anything unless the inference is is [sic] that that black line and the rubber or rubber-like substance that was found on the black line was left by one of the bicycles left in the accident." Finally, the trial court found the prejudicial effect of the evidence outweighed any probative value: "[I]t would be unfairly prejudicial to the defendant to allow the jury to speculate that that mark was left by one of the bicycles involved in the accident." A judicial mind could reasonably reach this conclusion. Therefore, the trial court exercised proper discretion in excluding the photograph of a black mark in the road and the accompanying testimony of Arlo Sommervold.

9. See note 6, *supra.*

10. The trial court found that Arlo Sommervold was competent as a lay witness to testify that he saw a black line that was four feet long and one inch wide and that he picked up a rubbery substance. SDCL 19–15–1.

## STANDARD OF REVIEW– INSTRUCTIONS

▮ The trial court should instruct the jury on issues supported by competent evidence in the record. *Kallis v. Beers,* 375 N.W.2d 642, 644 (S.D.1985). Generally, failure to give a requested instruction that correctly sets forth the law is prejudicial error. *Schelske v. South Dakota Poultry Co-op,* 465 N.W.2d 187, 190 (S.D.1991). The court is not required to instruct on issues that do not find support in the record. *Stormo v. Strong,* 469 N.W.2d 816, 824 (S.D.1991). Jury instructions are reviewed as a whole and are sufficient if they correctly state the law and inform the jury. *Cody v. Edward D. Jones & Co.,* 502 N.W.2d 558, 563 (S.D.1993); *State v. Martin,* 449 N.W.2d 29, 33 (S.D.1989). Error is not reversible unless it is prejudicial. SDCL 15–6–61; *Drier v. Great American Ins. Co.,* 409 N.W.2d 357, 360 n. 2 (S.D. 1987). The party asserting error has the burden of showing prejudice in failure to give a requested instruction. *State v. Corder,* 460 N.W.2d 733, 738 (S.D.1990); *State v. Grey Owl,* 295 N.W.2d 748, 751 (S.D.1980). The appellant must show the jury might, and probably would, have returned a different verdict if the proposed instruction had been given. *Frey v. Kouf,* 484 N.W.2d 864, 868 (S.D.1992); *Schelske v. South Dakota Poultry Co-op, supra,* 465 N.W.2d at 190.

## ISSUE FIVE

## GREVLOS' REQUESTED INSTRUCTION

### HALF OF THE ROAD

▮ There are no lane markings or center line painted on Tomar Road. Perhaps because of the unbanked curve in Tomar Road at the bottom of the two steep grades, traffic has tended to negotiate the curve as close to the south curb as possible. In practice, the eastbound lane nearly touches the south curb and the westbound lane is to the south of the geometric center of the street. A darker area (where cars have not driven as much) appears to separate the east and west bound lanes with the result that the "perceived" center of the road is different from the "geometric" [11] center.

Grevlos requested [12] an instruction [13] based on SDCL 32–26–3 which provides that drivers going in opposite directions shall pass each other to the right and give each other one half of the main-traveled portion of the road. The court originally had the same instruction in its set as Instruction Number 22 together with Instruction Number 18 [14] which contained the following:

> You are further instructed that another ordinance of the City of Sioux Falls states that upon all streets except one-way streets, the operator of a vehicle shall drive the same upon the right half of the street. This ordinance sets the standard of care of the ordinarily careful and prudent person. If you find that either plaintiff or defendant violated this ordinance, such violation is negligence.

The Sioux Falls city ordinance is similar [15] to SDCL 32–26–1 [16] which provides that a driver shall drive on the right half of all highways except one-way streets.

---

11. The geometric center is determined by measuring the width of the street and dividing it by two. The geometric center can be laid out with mathematical precision.

12. Grevlos' requested instructions were not numbered or otherwise identified at trial. Counsel are advised that one copy of each requested instruction submitted to the trial court should be numbered in accordance with paragraph 4 of SDCL 15–6–51(a).

13. Grevlos requested instruction contained the following:

PROPOSED JURY INSTRUCTION NO. ____
A statute in this State provides:
Drivers of vehicles proceeding in opposite directions shall pass each other to the right, each giving to the other at least one-half of the main-traveled portion of the roadway as nearly as possible.
This statute sets the standard of care of the ordinary, careful, and prudent driver. If you find that one of the parties violated it, such violation is negligence. Source: SDPJI 60–01(A), SDCL § 32–26–3.

14. Instruction Number 18 was based upon Sioux Falls Revised Ordinance 40–77.

15. A city ordinance which conflicts with state law would be invalid. *State v. Eidahl,* 495 N.W.2d 91, 94 (S.D.1993).

16. SDCL 32–26–1 provides as follows:
Upon highways of sufficient width, except upon one-way streets, the driver of a vehicle

Arguably, there is a difference between driving on the right half of the street and giving one half of the main traveled portion of the street. The evidence was in conflict on where the collision occurred. Both sides presented evidence that the perceived center of the road was different from the geometric center. Grevlos was on the wrong side of the geometric center of the road but was close to the perceived center.

### BICYCLE AS A VEHICLE

■ The trial court ruled that SDCL 32–26–3 did not apply because a bicycle is not a vehicle under SDCL 32–14–1(32). However, a bicycle is a vehicle. The present statutory definition of a vehicle originated in section 1(a) of chapter 251 of the 1929 Session Laws and continued as SDC 44.0301(1) and then SDCL 32–14–1(1) and provided that a "vehicle" included every device by which a person or property might be transported on a public highway and specifically provided that "a bicycle ... shall be deemed a vehicle." Therefore, a bicycle was a vehicle at the time of this collision. *Finch v. Christensen*[17], 84 S.D. 420, 424, 172 N.W.2d 571, 573 (1969).

In 1988, two years subsequent to the collision in this case, the legislature amended the definitions in SDCL 32–14–1 relating to drivers licenses.[18] The amendment also included "clean up" language in subdivision 1, which was later codified as subdivision 32, of SDCL 32–14–1, which currently provides the following:

(32) "Vehicle," every device in, upon, or by which any person or property is or may be transported or drawn upon a public highway, except devices moved by human power or used exclusively upon stationary rails or tracks; including bicycles or ridden animals.

Apparently, the trial court misread subdivision 32 to include bicycles in the exception rather than the definition. While this definition is not a paragon of clarity, bicycles are still clearly vehicles.

■ However, a trial court may still be upheld if it reached the right result for the wrong reason. *Cowell v. Leapley*, 458 N.W.2d 514, 519 (S.D.1990). The trial court correctly refused the requested instruction based on SDCL 32–26–3 because the requested instruction was not justified by the facts in this case.

In *Zakrzewski v. Hyronimus*, 81 S.D. 428, 434, 136 N.W.2d 572, 575 (1965), this court held that the trial court was correct to give instructions to the jury on both (the predecessors[19] of) SDCL 32–26–1 and 32–26–3. However, SDCL 32–26–1 and 32–26–3 appear to be inconsistent. SDCL 32–26–1 requires drivers to drive on the right half of the road (unless it is impractical). SDCL 32–26–3 requires drivers meeting from opposite directions to pass each other to the right and to give at least one half of the main traveled portion of the road to the oncoming vehicle. Both halves of the main traveled portion of a road may be on the same side of the road.

Historically, this dichotomy made some sense. Early roads were often trails within the right of way that meandered along the right of way according to need or whim. In *Schnabel v. Kafer*, 39 S.D. 70, 71–72, 162 N.W. 935, 935–36 (1917), the "road" was a 66 foot wide, unworked, fenced right of way. The "traveled portion" was a single track worn by wagons. The track was ten feet from the fence at the point of impact. Kafer ran into Schnabel's bicycle in the track. Schnabel was on the right side of the track but on the left half of the right of way. Kafer claimed he was entitled to half of the right of way. Judge Polley said the law was clear that there was a difference between

---

shall drive the same upon the right half of the highway ... unless it is impracticable to travel on such side of the highway.... A violation of this section is a Class 2 misdemeanor.

**17.** This case involved a bicycle at night, without a light on the wrong side of the road.

**18.** House Bill 1054 enacted as chapter 256 of the 1988 Session Laws.

**19.** SDC 44.0309 and 44.0311.

half of the right of way and half of the traveled portion and Kafer should have given Schnabel half of the track or the "traveled portion." *Schnabel, supra,* 39 S.D. at 73–74, 162 N.W. at 936.

■ Tomar Road is not a wagon trail within an unimproved right of way. The habits of the public in cutting a curve short cannot redefine the rights and obligations of the drivers using the highways. In *Zakrzewski, supra,* 81 S.D. at 434, 136 N.W.2d at 575, the court said "We think that the 'main traveled portion of the roadway', referred to in the statute, was under the circumstances of this case at the time of the accident the width of the street between the curb lines..... Under the undisputed facts the area of the collision ... was not impassable because of drifted snow or other unusual conditions and it was not 'impracticable' to travel on the right half of the street." The main traveled portion of Tomar Road was the street between the curb lines, not the portion actually traveled by the public in cutting the curve short. There was no impediment to prevent Grevlos from riding his bicycle to the right side of the geometric center of Tomar Road and he should have done so.

■ The trial court should instruct the jury on issues supported by competent evidence in the record. *Kallis v. Beers, supra,* 375 N.W.2d at 644 (S.D.1985). The court is not required to instruct on issues that do not find support in the record. *Stormo v. Strong, supra,* 469 N.W.2d at 824 (S.D.1991). There were no facts in evidence that any portion of Tomar Road was impassable. Therefore, there was no basis in the evidence for the court to give an instruction based on SDCL 32–26–3. The main travelled portion of Tomar Road under the circumstances of this case at the time of the collision was the width between the curb lines. Giving Grevlos' requested instruction would have allowed the jury to speculate that the center of the road was something other than the geometric center which would be inappropriate in this case. Therefore, the trial court properly refused Grevlos' requested instructions based on SDCL 32–26–3.

ISSUE SIX

GREVLOS' REQUESTED INSTRUCTION

PROPER LOOKOUT

Grevlos requested two instructions concerning the duty to keep a proper lookout and the duty to see what is in plain sight. The court originally had a substantially similar instruction in its set as Instruction Number 24. Grevlos' first proposed instruction on proper lookout included the following:

It was the duty of the Plaintiff to exercise a reasonable degree of care for his own safety, and in the exercise of such care Plaintiff is held to the duty of seeing what there is to be seen and what he should have seen in the exercise of ordinary care.

A failure to use such care is negligence.

The trial court's Instruction Number 24 stated as follows:

It was the duty of both parties to exercise a reasonable degree of care for their own safety, and in the exercise of such care each is held to the duty of seeing what there is to be seen and what he should have seen in the exercise of ordinary care.

A failure to use such care is negligence.

Grevlos' second proposed instruction on proper lookout stated as follows:

The driver of a bicycle has the duty of seeing what the evidence shows plainly could have been seen. If you determine from the evidence that the bicycle involved in this collision would clearly have been visible to a bicycle rider in the position of Jon Sommervold the Plaintiff at or immediately prior to the occurrence, you must assume that he did see it and, on that basis, determine whether the conduct was negligent.

The trial court refused Grevlos' instructions and deleted Instruction Number 24 from the court's instructions.

Jury instructions must be considered as a whole and are adequate if they correctly state the law and inform the jury. *Herren v. Gantvoort,* 454 N.W.2d 539, 542 (S.D.1990). The trial court highlighted Grevlos' claim that Sommervold failed to keep a proper lookout in Instruction Number 2 with the following: "4. That Mr. Sommervold failed

to keep a proper lookout...." The court's Instruction Number 16 stated as follows:

> Under the law as applied to the present case, every person is responsible for injury to the person or property of another, caused by such person's want of ordinary care or skill, subject to the defense of contributory negligence. When used in these instructions, negligence means want of such ordinary care or skill. Such want of ordinary care or skill exists when there is a failure to do that which a reasonably prudent person would do or when there is done that which a reasonably prudent person would not do; this in each instance in the same or similar circumstances as existed in connection with the conduct which is under consideration.[20]

The trial court also instructed the jury that bicycle riders are bound by the same rules as automobile drivers (Instruction Number 17), that bicycles must be ridden on the right half of the street (Instruction Number 18), that the speed limit was 25 miles per hour (Instruction Number 19), that bicycles should be ridden at a reasonable and prudent speed (Instruction Number 20), that a bicycle should have a light from one half hour after sunset to one half hour before sunrise (Instruction Number 21) and that violation of an ordinance must be the proximate cause of the damage (Instruction Number 23). Finally, the trial court instructed the jury in Instruction Number 25 as follows:

> The operator of a bicycle may assume that other operators using the highways will obey the laws of the road until said operator knows, or in the exercise of reasonable care should know, otherwise.

The instructions given the jury correctly stated the law and were adequate. The legal principles in Grevlos' proposed instructions were generally embodied in the instructions given by the trial court. It is not error to refuse proposed instructions that are already covered in the court's instructions. *Herren v. Gantvoort, supra,* 454 N.W.2d at 542. Therefore, the trial court properly refused Grevlos' requested instructions on proper lookout.

**20.** South Dakota Pattern Jury Instruction 10–01.

## ISSUE SEVEN

## GREVLOS' REQUESTED INSTRUCTION

### VIOLATION OF A STATUTE

 Grevlos requested two instructions concerning the duty to have a light on a bicycle. Sommervold did not have a light on his bicycle. The collision occurred more than one half hour after sunset, which was at 9:10 p.m., some time between 9:50 p.m. and 10:05 p.m. Sommervold was cited for not having a light and pled guilty to violation of a Sioux Falls city ordinance. Grevlos' first proposed instruction read as follows:

> Ordinance of the City of Sioux Falls provides in part:

> Every bicycle driven upon any street, recreation trail or sidewalk during the period from a half-hour after sunset to a half-hour before sunrise and at any other time when there is not sufficient light to render clearly discernible any person at a distance of five hundred feet ahead, shall be equipped with a lighted front lamp exhibiting a white light visible from a distance of at least five hundred (500) feet to the front ...

> This ordinance sets the standard of care of the ordinarily careful and prudent person. You are hereby instructed that Plaintiff Jon Sommervold violated it and that such violation is negligence. Whether or not this negligence was a proximate cause of the collision and any ensuing damages is for you to determine.

Grevlos' second proposed instruction read as follows:

> A statute in South Dakota provides in part:

> Every bicycle shall be equipped with a lighted lamp on the front thereof visible under normal atmospheric conditions from a distance of at least three hundred feet in front of such bicycle ...

> This statute sets the standard of care of the ordinarily careful and prudent person. If you find plaintiff violated it, such violation is negligence.

The court gave the following as Instruction Number 21:

An ordinance of the City of Sioux Falls provides in part:

Every bicycle driven upon any street, recreation trail or sidewalk during the period from a half-hour after sunset to a half-hour before sunrise and at any other time when there is not sufficient light to render clearly discernible any person at a distance of five hundred feet ahead, shall be equipped with a lighted front lamp exhibiting a white light visible from a distance of at least five hundred (500) feet to the front

. . .

This ordinance sets the standard of care of the ordinarily careful and prudent person. If you find a party violated it, such violation is negligence.

Grevlos' first proposed instruction was not a correct statement of the law. A guilty plea does not conclusively establish the violation but is an admission against interest. *Dartt v. Berghorst*, 484 N.W.2d 891, 894 n. 3 (S.D. 1992). Grevlos' second proposed instruction was in conflict with Grevlos' first proposed instruction and in conflict with and cumulative to the trial court's Instruction Number 21. Conflicting instructions should not be given. *Juniata Feedyards v. Nuss*, 216 Neb. 29, 342 N.W.2d 1, 4 (1983). Cumulative instructions are properly refused. *Builders Supply Co., Inc. v. Carr*, 276 N.W.2d 252, 256–57 (S.D.1979). The trial court's Instruction Number 21 was a correct statement of the applicable law. Finally, Grevlos' contention that the trial court's instruction was party-neutral is without merit. By definition, a party-neutral instruction does not favor either party. Therefore, the trial court properly refused Grevlos' requested instructions and properly instructed the jury on violation of a statute.

■ Finally, Grevlos has failed to show that refusal to give any of his proposed instructions was prejudicial. Error is not reversible unless it is prejudicial. SDCL 15–6–61; *Drier v. Great American Ins. Co., supra*, 409 N.W.2d at 360 n. 2. The party asserting error has the burden of showing prejudice in failure to give a requested instruction. *State v. Corder, supra*, 460 N.W.2d at 738; *State v.*

*Grey Owl, supra*, 295 N.W.2d at 751. The appellant must show the jury might, and probably would, have returned a different verdict if the proposed instruction had been given. *Frey v. Kouf, supra*, 484 N.W.2d at 868; *Schelske v. South Dakota Poultry Co-op, supra*, 465 N.W.2d at 190. If this case were tried one hundred times, Grevlos would still be on the wrong side of the road and Sommervold would still not have a light. In all probability, the jury would reach the same conclusion every time. *Holmes v. Wegman Oil Co.*, 492 N.W.2d 107, 113–14 (S.D.1992). We affirm.

HENDERSON, J., and McKEEVER, Circuit Judge, concur.

SABERS, J., concurs in part and dissents in part.

MILLER, C.J., dissents.

GORS, Circuit Judge, for WUEST, J., disqualified.

McKEEVER, Circuit Judge, for AMUNDSON, J., disqualified.

SABERS, Justice (concurring in part and dissenting in part).

Although "a judicial mind could reasonably reach" the same conclusion as the trial court on Issues One, Two, and Three, it does not necessarily follow that "the trial court exercised proper discretion" in doing so. Generally, the law should favor the admission of evidence in this type of case. In fact, admission of this evidence would have been a better exercise of discretion.

On Issue Four, I believe the trial court erred in excluding Sommervold's photo of the black mark in the road and the accompanying testimony. This may very well be the "best" evidence as to "point of impact," the key factor in this entire lawsuit. Certainly, the jury could decide, based on all the evidence, whether this evidence should be accepted or rejected as controlling.

On Issue Five, I join Chief Justice Miller's dissent.

On Issue Six, I believe the trial court erred in refusing Grevlos' requested instructions on

proper lookout. See my dissent in *Herren v. Gantvoort,* 454 N.W.2d 539, 543 (S.D.1990). It was crucial for the jury to be properly instructed that Sommervold had a duty to see what was there to be seen (and was bound by same whether he saw anything or not). *Id.* (citations omitted). It is not enough for the trial court to simply highlight that Grevlos *claimed* Sommervold failed to keep a proper lookout—a proper instruction was required.

The trial court's ruling on Issue Seven appears correct even though it is contrary to the majority opinion in *Stevens v. Wood Sawmill, Inc.* 426 N.W.2d 13, 14–17 (S.D.1988) ("As a general rule, 'where a particular statutory or regulatory standard is enacted to protect persons in the plaintiff's position or to prevent the type of accident that occurred, and the plaintiff can establish his relationship to the statute, [an] *unexplained violation of that standard renders the defendant negligent as a matter of law.'* ").

Finally, the majority opinion concludes with the statement:

> If this case were tried one hundred times, Grevlos would still be on the wrong side of the road and Sommervold would still not have a light. In all probability, the jury would reach the same conclusion every time.

That statement misses the mark because, even if it were true, it is neither the point nor the test. The parties are entitled to a reasonably fair trial with a properly instructed jury. These parties had neither and are entitled to a new trial.

MILLER, Chief Justice (dissenting).

I agree that the trial court erred in ruling that a bicycle is not a vehicle under settled South Dakota law. SDCL 32–14–1(32); *Finch v. Christensen,* 84 S.D. 420, 424, 172 N.W.2d 571, 573 (1969). However, I dissent as to the majority's conclusion that, even though based on an erroneous ruling, the trial court nevertheless reached the correct result in refusing to give a jury instruction based on SDCL 32–26–3.[1]

The trial court instructed the jury as to SDCL 32–26–1,[2] which covers driving on the right hand side of the road except when overtaking and passing another vehicle. SDCL 32–26–3 is the statute which expresses the law when vehicles are proceeding in opposite directions. As the majority notes, "SDCL 32–26–1 and 32–26–3 appear to be inconsistent." This is because they set forth the law on different driving procedures—overtaking and passing a vehicle proceeding in the same direction as opposed to passing a vehicle proceeding in the opposite direction. Clearly, the statute on passing a vehicle approaching from the opposite direction was pertinent in this case. The jury simply was not properly instructed as to the applicable law in South Dakota.

The trial court denied an instruction on SDCL 32–26–3 for two reasons; first, its erroneous finding that a bicycle was not a vehicle and, second, its concern that the instruction might have confused the jury.

> THE COURT: Your objection's denied. And I may say also is incomplete because it does not define main traveled portion which is all of the roadway that is available for travel. It does not include the right-of-way. It would be confusing to this jury because they could look at the business of the perceived center of the road as opposed to the real center of the road, and that would make it confusing and misleading. In the form submitted, it's confusing, misleading. And it's denied.

---

1. SDCL 32–26–3 provides:
 Drivers of vehicles proceeding in opposite directions shall pass each other to the right, each giving to the other at least one-half of the main-traveled portion of the roadway as nearly as possible. A violation of this section is a Class 2 misdemeanor.

2. SDCL 32–26–1 provides:
 Upon all highways of sufficient width, except upon one-way streets, the driver of a vehicle shall drive the same upon the right half of the highway and shall drive a slow-moving vehicle as closely as possible to the right-hand edge or curb of such highway, unless it is impracticable to travel on such side of the highway and except when overtaking and passing another vehicle subject to the limitations applicable in overtaking and passing set forth in §§ 32–26–26 to 32–26–39, inclusive. A violation of this section is a Class 2 misdemeanor.

I agree with the trial judge that the jury could have been confused by what was meant by the main traveled portion of the road. However, the solution to potential confusion was to give an additional instruction defining the term, not to refuse an instruction on the only South Dakota statute dealing with passing an oncoming vehicle.

Second, the majority opinion seems to require that before an instruction on SDCL 32–26–3 may be given, a trial court must find that one-half the main traveled portion of the roadway is somehow different from half of the geographic roadway or find that some portion of the roadway was impassible. The opinion then cites cases in which this court defined the "traveled" or "main-traveled portion" of the roadway. *See*, e.g., *Zakrzewski v. Hyronimus*, 81 S.D. 428, 136 N.W.2d 572 (1965); *Schnabel v. Kafer*, 39 S.D. 70, 162 N.W. 935 (1917). While I have no objection to clarifying a potentially confusing term for the jury, I do object to adding a requirement that the trial court find the main traveled portion of the roadway somehow differs from the geographic half of the roadway before giving an instruction on a statute which deals with passing oncoming traffic. The statute clearly contains no such condition and I dissent as to the creation of such a requirement.

It is well-settled law in this jurisdiction that failure to give a requested jury instruction setting forth the applicable law constitutes not only error, but prejudicial error. *Dartt v. Berghorst*, 484 N.W.2d 891 (S.D. 1992); *Schelske v. South Dakota Poultry Co-op*, 465 N.W.2d 187 (S.D.1991); *Kreager v. Blomstrom Oil Co.*, 379 N.W.2d 307 (S.D. 1985); *Rosenberg v. Mosher*, 331 N.W.2d 79 (S.D.1983); *Atyeo v. Paulsen*, 319 N.W.2d 164 (S.D.1982); *Wolf v. Graber*, 303 N.W.2d 364 (S.D.1981); *Jahnig v. Coisman*, 283 N.W.2d 557 (S.D.1979). As characterized by Justice Henderson, " 'Prejudicial error' is not vacuous, vague or vaporous. It has a well-settled meaning in this state. 'Prejudicial error' is that which in all probability must have produced some effect upon the final result and affected rights of the party assigning it." *State v. Devine*, 372 N.W.2d 132, 141 (S.D.1985) (Henderson, J., dissenting). "These bad instructions, in all probability, had some effect upon the final result and

affected Darrow's rights." *Darrow v. Schumacher*, 495 N.W.2d 511, 524 (S.D.1993) (Henderson, J., dissenting). Similarly, the refusal to give a jury instruction on the applicable statutory law was prejudicial error which effected Grevlos' rights and requires reversal of the judgment and remand for a new trial with a properly instructed jury.

